A89A0310. CREWS et al. v. McQUEEN et al.
(385 SE2d 712)

BIRDSONG, Judge.

This case involves a school spanking of an eight-year-old boy because he failed to do his homework or failed to bring it to school. Summary judgment was granted to the defendant school principal, McQueen.

According to appellant Crews, the two versions of what occurred in the principal's office that day differ significantly. The appellant, in brief, urges as fact that "[t]he minor Appellant was fidgity and did not want to position himself in front of the Appellee's desk and at one point was placed across the Appellee's knees but continued to be uncooperative throughout. Due to the lack of cooperation on the part of the minor Appellant, the Appellee again had the minor stand in front of the desk with his hands on the edge of the desk. When the minor would not remove his hands from his buttocks area, the Appellee positioned himself as described above and after administering the first lick, due to the pain he was experiencing, the minor Appellant began to cry and dropped to his knees. The Appellee then 'jerked' the child up by his right arm (which was behind his back) into an almost standing position, and then realizing that the arm was broken, let the child drop back to the floor. . . . Due to the actions of the Appellee . . ., the minor Appellant suffered a severe spiral fracture of the upper right arm."

The appellee contends he is entitled to sovereign immunity. The trial court, applying *general principles of governmental immunity,* found the principal's actions were " ' "within the scope of the officer's authority, and *without wilfulness, malice, or corruption." ' "* Hen-

*nessy v. Webb*, 245 Ga. 329, 331 (264 SE2d 878). *Held*:

1. We as judges of this appellate court cannot shrug off our judicial robes and sit in the jury's box to decide any fact in this case. The parent has asserted a cause of action because the child's arm was broken while the child was being administered corporal punishment. The staunchest proponent of corporal punishment cannot as a matter of law resolve all factual disputes in favor of a judicial finding of immunizing "good faith," without doing fatal damage to his or her own cause. That approach does nothing to advance the right of school administrators to employ corporal punishment in this state.

The right of school administrators is in fact not in question in this state, and leaving this case to the jury does not put it in question. But a blind championing of that right to administer physical punishment, to the point of removing from the jury the ultimate statutory question of good faith in a highly disputed case, is more liable than anything to destroy it. It will water down the statutory restrictions on corporal punishment to nothing except the judgment of the administrator and increase the dangers of abuse proportionately and inevitably give the objectors more power to intervene. This is not what the legislature intended.

There are significant issues of fact in this case, the first being the question of what actually occurred in the principal's office, and whose version is correct. Then there are the vital questions whether *within the exercise of sound discretion*, the corporal punishment was "in good faith" *and* whether the corporal punishment was "excessive or unduly severe." OCGA § 20-2-731. If so, the administrator is immune from civil or criminal liability under the express terms of OCGA § 20-2-732. But before this issue is determined, the question of what actually happened is one only the jury can decide.

The court below was not authorized to determine which version was more credible, as it seems to have done. On appeal of a summary judgment ruling, there can be no presumption in favor of a trial court's express or implied finding of fact. The trial court's sole function on a motion for summary judgment is to determine *whether there is a genuine issue of material fact*; it is not its function to determine what the facts are, for that is the jury's right and role.

If certain facts are undisputed, there is not anything to be "found"; and if one of the parties, even the respondent, has contradicted himself, the trial court may adjudge the testimony against that party, and its determination that such contradiction has not been reasonably explained is *an issue of law* for the trial court to decide (*Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30-31 (343 SE2d 680); *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474 (359 SE2d 231)). The trial court's determination on the legal issue whether a contradiction has been reasonably explained, carries a peculiar

weight on appeal, only because a party has no right to make "deliberate," contradictory statements, and if he does so, the determination whether such contradiction is reasonably explained is not one for the jury in the first instance. *Prophecy Corp.*, supra.

However, except as to that singular determination of reasonable explanation where one party has contradicted himself, no presumption of correctness attaches to a trial judge's finding or conclusion of fact by resolving material ambiguities or conflicts in evidence, *for he is not supposed to do it*. His role is not to determine issues of fact, but to determine if there is an issue of fact. The dissent in this case has remarked that "[s]ince this matter was decided on summary judgment, all evidence and ambiguities created thereby must be construed most favorably towards the respondent and against the movant," and cites two cases; but the difficulty of this statement is that it implies that "*since* this matter *was decided* on summary judgment, [*on appeal*] all evidence and ambiguities created thereby *must be construed* most favorably towards the respondent and against the movant."

This has never been the law of summary judgment. At the trial level, the construction of all evidence and ambiguities and inferences created thereby *in favor of the respondent*, is merely the procedural mechanism by which the trial court preserves for the jury any issue of fact, if there is one or if one can be made. *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736, 739 (123 SE2d 179). "The cardinal rule of the summary judgment procedure is that *the court can neither resolve the facts nor reconcile the issues, but can only look to ascertain if there is an issue.* [Cits.]" (Emphasis supplied.) Id.

Even as to the determination that an issue of fact exists, there is no presumption that the trial court is correct (see *Bagley*, p. 740), and no such presumption was suggested in the two cases cited by the dissent, *North v. Toco Hills*, 160 Ga. App. 116, 119 (286 SE2d 346); *Blount v. Seckinger Realty Co.*, 167 Ga. App. 778, 779 (307 SE2d 683).

Thus, where as here, there are materially varying versions as to what occurred in a case, the trial court on motion for summary judgment is not empowered to construe these versions in favor of anybody so as to resolve any issue but may do so only to *determine if there is one*. Therefore, where the trial court has attempted to resolve any material issue of fact, either by construing the evidence in a certain fashion or otherwise, the trial court has exceeded its power with the grant or denial of summary judgment. Since it was not empowered to do so in the first place, no presumption can arise on appeal that it was correct in such resolution; and certainly we do not construe "all evidence and ambiguities created thereby" to sustain it.

To say otherwise would be to convert the summary judgment procedure from one designed to preserve issues of fact to one which

disposes of them. This would act not only to destroy summary judgment procedure, but to eviscerate the entire jury system as well, for by construing evidence to resolve issues, the trial court would become the factfinder. Further, if on appeal we then construed all evidence and ambiguities and inferences created thereby to uphold the trial court's determination, we would be sitting in review of a finding of fact, and not in review of a finding that there is an *issue of fact.*

The trial court's order applies general rules of sovereign immunity, and suggests that neither version of the events shows absence of good faith because it seems clear beyond issue that the appellee did not act with wilfulness, malice, or corruption. As shown in Division 2 of this opinion, a determination as to "wilfulness, malice or corruption" does not control this case; rather the question is one of good faith. The varying versions of the parties make this the ultimate question for the jury.

Even if the principal did act in good faith, under the specific provisions of Title 20, which controls this case (see Division 2), there is still the factual question whether the corporal punishment "is . . . excessive or unduly severe" (OCGA § 20-2-732; and see OCGA § 20-2-731 (1) and (2)). The plaintiff here raised plain factual issues whether the intended punishment in this case was appropriate for the boy's misdeed, whatever that misdeed is found to have been; for if the jury finds it was not, then it may have been "excessive or unduly severe," even though it was administered in good faith.

2. The legislature has made express provision for immunity in corporal punishment cases at OCGA § 20-2-732. While general rules of sovereign immunity (see, e.g., *Hennessy*) may not be strictly *inapplicable* to all corporal punishment cases, the express immunity provisions at OCGA § 20-2-732 will always control.

For the most part, the provisions of OCGA § 20-2-732 are compatible with general rules of sovereign immunity. However, we strongly question the summary application of a general principle "scope of authority" determination, in view of the "sound discretion" vested in the administrator by the statute authorizing corporal punishment in certain circumstances. OCGA § 20-2-731 (1) through (5) carefully defined the situations which are within the *scope* of the authority to administer corporal punishment, but that statute also places the determination of these situations and of the punishment within *"the exercise of [the principal or teacher's] sound discretion."* (Emphasis supplied.)

Thus, even though certain punishment was within the "scope of authority" (OCGA § 20-2-731 (1)-(5)), it still may have been outside the administrator's *sound discretion.* It does not necessarily follow that because it was technically authorized, it was administered in sound discretion; nor that the conclusion the situation fit within sub-

paragraphs (1)-(5) was made in sound discretion. The question of "discretion" in these case is subject to so many variables that except in egregious circumstances, it generally cannot be determined as a matter of law.

We therefore decline to apply the general principles of sovereign immunity to this case, for the legislature, in expressly creating specific "authorized" situations but subjecting them to "sound discretion," has made a distinct and controlling rule. Application of general immunity is not only unnecessary, but may well lead to results contrary to the mandates and authorizations in Title 20.

In *Maddox v. Boutwell*, 176 Ga. App. 492 (336 SE2d 599) we indicated that if the punishment in that case were *outside* the guidelines of OCGA § 20-2-731 (1) in particular, it would (employing general rules of immunity) necessarily be *outside* the scope of authority. Obviously this is true, but the opposite proposition is not: a situation that may be *within* the factual limits of § 20-2-731 (1) through (5), still may be *outside* the exercise of the administrator's "sound discretion."

We conclude that in some cases the admixture of both lines of analysis may, perhaps coincidentally, lead to consistent results, but not so in this case. Since the underlying facts are in genuine issue, the trial court could hardly determine whether they fit within the authorizing paragraphs (1) through (5) of OCGA § 20-2-731, *and* within the principal's "sound discretion." In fact, the latter determination may be so subtle as to defy resolution as a matter of law, even where facts are undisputed.

Inasmuch as the facts are directly disputed in this case, the determination of these issues under the law stated is one for the jury.

*Judgment reversed. Carley, C. J., Deen, P. J., and McMurray, P. J., concur. Beasley, J., concurs specially. Banke, P. J., Sognier, Pope and Benham, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur in the judgment based on the following.

The incident involved in this case has been before the Court before. In *Pennsylvania Millers Mut. Ins. Co. v. Crews*, 184 Ga. App. 492 (361 SE2d 657) (1987), summary judgment for the parent was upheld in the declaratory judgment action brought by the school board's liability insurer. The basis for the holding was that the policy exclusion for bodily injury expected or intended by insured did not apply and consequently there was coverage. The factual premise was that, as the Court stated, "[The child] was injured while being paddled . . . when he twisted to avoid a second 'lick' of the paddle."

Thus it appeared that the broken arm resulted from what the child did and not from what the principal was authorized to do, inflict

a paddling. Paddling was of course intended, and paddling of course inflicts injury, albeit minimal factually and acceptable legally, but paddling was not the injury complained of. The broken arm occurred when the child acted to get out of the hold of the principal, whose arm-holding activity carried with it no intention to harm.

Now we move to the tort action brought by the parent in his individual and next friend capacities. Without comparing the records in the two cases, it appears that the present record contains conflicting evidence with regard to how the arm became broken.[1] The principal says the child twisted and dropped while he was holding the child's wrist to prevent him from protecting his buttocks, which sudden twisting and dropping resulted in the break. The child says that after the first swat he dropped to his knees and the principal "jerked" him up off the floor by the arm, breaking it at that time.

The law provides that the principal is not liable in a "civil action based upon the administering of corporal punishment where the corporal punishment is administered in good faith and is not excessive or unduly severe." OCGA § 20-2-732. Plaintiff does not contend that the paddling itself was excessive or unduly severe. One swat of a two-swat punishment had been administered for repeated homework deficiencies. The principal showed as a matter of law that the punishment was administered in good faith, that is, there was a valid reason for it and the established procedures for corporal punishment were followed; no contrary evidence was offered.

Before the principal could be liable, a jury would have to first find that the arm broke because the principal jerked him up after he dropped to avoid or delay the second swat. If he jerked him more roughly than necessary, and the jerking or yanking or snatching up was done in such a way as to be part of the punishment, a jury could find that it was "excessive or unduly severe" in the contemplation of the statute. Without hearing or seeing the conflicting witnesses, lack of excessiveness or undue severity cannot be established as a matter of law in this case, given the evidence.

There was a genuine dispute over what action by whom resulted in the break, which was a material fact as related to the issue of the principal's civil liability. He was therefore not entitled to summary judgment. OCGA § 9-11-56 (c).

BENHAM, Judge, dissenting.

Since a fair reading of the majority opinion leaves me with some undispelled qualms, I find it necessary to dissent. The issue here is

---

[1] Deposition of the child was taken after the appellate decision in the declaratory judgment action. Although there is some indication a second deposition of the principal was taken at about the same time, only his earlier 1985 deposition is in the record.

whether the actions of the principal in administering corporal punishment were within the scope of his authority and without wilfulness, malice, or corruption. The majority, in deciding to reverse the trial court's grant of summary judgment to the principal, rules that issues of fact remain for determination as to these matters.

1. The majority opinion decides that issues of fact remain as to whether the actions of the principal were in the scope of his authority. There are two versions of how the injury occurred. The student contends that the injury occurred when he was jerked up from the floor where he had fallen trying to avoid the second lick. The principal contends that the injury occurred while the student was making a twisting motion in avoiding the second lick. In deciding on the summary judgment issue, the trial court was required to view all evidence and ambiguities created thereby favorably towards the respondent and against the movant. *North v. Toco Hills, Inc.*, 160 Ga. App. 116, 119 (286 SE2d 346) (1981); *Blount v. Seckinger Realty Co.*, 167 Ga. App. 778, 779 (307 SE2d 683) (1983).

In support of its determination that material issues of fact remain as to this issue, the majority opinion cites *Maddox v. Boutwell*, 176 Ga. App. 492 (336 SE2d 599) (1985). In that case, the issue was whether the punishment administered was in bad faith and excessive. "If so, the punishment would be outside the established guidelines and, therefore, outside the scope of [the principal's] authority, rendering him liable. If not, [the principal] would be protected by both types of immunity." Id. at 492.

"Corporal punishment in Georgia schools is provided for by OCGA § 20-2-730 et seq. In § 20-2-731, it is provided that school boards may authorize the administration of corporal punishment by the adoption of written policies and that such authority is subject to certain limitations, the first of which is '(t)he corporal punishment shall not be excessive or unduly severe.'" Id. at 492.

This approach is in conformity with the approach taken in *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878) (1980): "'[S]chool boards, and other agencies or authorities in charge of public schools enjoy immunity from tort liability for personal injuries or death sustained by pupils or other persons in connection therewith, in the absence of a legislative enactment to the contrary, at least where only negligence was involved.' . . . "'[I]t is . . . well established that "where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and *without wilfulness, malice, or corruption.*"'"

There is no question that the school adopted a written policy for administering punishment and that appellee followed that policy in administering punishment. Therefore, the principal will not be considered as having acted outside the scope of his authority unless there is evidence that his actions in administering punishment were wilful or wanton. Hence, no decision can be made on the scope of authority issue until we consider the wilful or wanton issue.

2. As to the wilful or wanton issue, the majority opinion decides that a material issue of fact remains as to whether the punishment was unduly severe or excessive. A review of the legislative enactments concerning corporal punishment makes it abundantly clear that the legislature chose to vest considerable discretion in the school administrators, realizing that people differ considerably as to when corporal punishment is justified and the extent to which punishment should be administered. It necessarily follows that if considerable discretion is given to school officials, then considerable allowances must be made to protect them in the exercise of that discretion. This is especially true where, as in the case sub judice, it does not appear that anger or malice is involved.

Realizing the need to protect school officials from unwarranted accusations and the need to protect students from unduly severe punishment, some states have created a rebuttable presumption in favor of reasonableness. 6 AmJur2d 42, Assault & Battery, § 46. Since our legislature exempted school administrators from liability except where the punishment is excessive or unduly severe (OCGA § 20-2-732; see also *Webb v. Hennessy*, supra), it appears that for all practical purposes, the legislature intended to provide a presumption in favor of reasonableness.

The majority decision appears to rely mainly on the fact that the student's arm was broken rather than on the circumstances which led to the injury. It must be kept in mind that the injury occurred not from the punishment itself, but from the student's attempt to avoid punishment. There is no dispute that the punishment itself was not disproportionate to the gravity of the offense and that the injury occurred while the teacher was engaged in moderate restraint or correction. Therefore, to avoid summary judgment, appellants must show that the method or manner of punishment was in some way excessive. Punishment is not necessarily excessive simply because it results in an injury.

Where there is no showing of excessiveness, we must look to whether the instrument used or the manner in which it is used gives rise to an implication of malice. There is nothing about this case to indicate such. There being no malice, wantonness, or wilfulness, the trial court was eminently correct in granting summary judgment to the school officials.

I am authorized to state that Presiding Judge Banke, Judge Sognier and Judge Pope join in this dissent.

DECIDED JULY 14, 1989 —
REHEARING DENIED JULY 31, 1989 — 

*Hutto, Palmatary, Magda & Krider, B. Michael Magda*, for appellants.

*Alva J. Hopkins III, John B. Adams, Bryant H. Bower, Jr., Terry A. Dillard, Robert B. Sumner*, for appellees.