## S90G0231. LOGUE v. WRIGHT.
### (392 SE2d 235)

CLARKE, Chief Justice.

Wright sued Richmond County and Logue, a Richmond County deputy. Wright alleged that Logue caused a collision with Wright through negligent operation of his patrol car. It is undisputed that the county carried no liability insurance covering the incident. The trial court granted summary judgment to Richmond County but denied Logue's motion for summary judgment. Logue sought to appeal the denial of his motion for summary judgment. This appeal did not involve the grant of summary judgment to the county. The Court of Appeals granted an application for interlocutory review and then dismissed the appeal. *Logue v. Wright,* 193 Ga. App. XXX (1989). We accepted certiorari to decide the following questions:

A) In light of this court's decisions in *Martin v. Ga. Dept. of Public Safety,* 257 Ga. 300 (357 SE2d 569) (1987), cert. denied 484 U. S. 998 (1988), and *Price v. Dept. of Transp.,* 257 Ga. 535 (361 SE2d 146) (1987), does the applicability of sovereign immunity still turn on the distinction between ministerial and discretionary acts of public officials?

B) Is a county required by OCGA § 45-9-40 and *Toombs County v. O'Neal,* 254 Ga. 390 (330 SE2d 95) (1985), to secure liability insurance to cover damages arising out of the operation of county-owned motor vehicles? If so, what is the effect of a failure to secure such insurance?

C) Is the Department of Risk Management of Richmond County, which is budgeted to compensate "claims against the county and its employees for which the county or its employees are legally responsible," a self-insurance fund within the meaning of OCGA § 45-9-1 et seq.?

1. Under this court's decisions in *Martin* and *Price,* supra, where there is a formal self-insurance plan or a policy covering official acts of a public official, sovereign immunity is waived. However, where there is no self-insurance fund, the distinction between ministerial and discretionary acts is still viable in ruling on immunity for public officials for liability for their negligent acts. It is important to keep in mind that the immunity is for negligent acts, not for malicious acts, acts of corruption, wilful acts, or acts involving reckless disregard for

the safety of others.

Under *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980), if Logue was acting in his official capacity he is immune from liability for negligent acts which were discretionary rather than ministerial. Logue argues that he was acting in his official capacity in responding to an emergency and that his actions were discretionary in nature. Logue insists that since he is being sued in his official capacity and since the complaint alleges mere negligence, he is entitled to summary judgment on the basis of sovereign immunity.

Appellee Wright relies upon the case of *Crews v. McQueen*, 192 Ga. App. 560 (385 SE2d 712) (1989), in which the Court of Appeals considered the question of sovereign immunity in the case of a child whose arm was broken during a paddling by a school principal. The majority held that summary judgment in favor of the principal was not appropriate in that case because a question of fact remained as to whether the punishment was within the sound discretion of the principal. The case is distinguishable from the present case because *Crews* was decided according to the provisions of OCGA § 20-2-732, which provides immunity for school officials administering corporal punishment which is neither excessive or unduly severe in good faith. The Court of Appeals acknowledged that while OCGA § 20-2-732 is generally compatible with general principles of sovereign immunity, a finding that a school official was acting within the "scope of authority" is not sufficient to determine whether the punishment was within the "exercise of . . . sound discretion" as required by OCGA § 20-2-731. In other words, an act could be within the scope of authority as required by *Hennessy v. Webb*, supra, and still be beyond the exercise of sound discretion.

In the present case there was no dispute that Logue was answering a call regarding a fight when the accident occurred. He was not using his blue light or siren when he failed to yield the right-of-way to Mrs. Wright and caused the collision in question. Under OCGA § 40-6-6 a car driven by a local law enforcement officer when responding to an emergency call or when in pursuit of an actual or suspected violator of the law may disregard certain rules of the road. However, the officer must use a flashing or revolving blue light when the rules of the road are not adhered to. Failure to use the light or siren in this case was an act of negligence, not an act of malice, corruption, wilfulness, or reckless disregard for the safety of others. Therefore, if the county has not waived immunity by obtaining insurance, the trial court was incorrect in denying summary judgment to Logue under the principles discussed in *Hennessy v. Webb*, supra.

We agree that under the facts of this case the defendant had no discretion to violate the law by failing to activate his blue light and siren. In fact, we would subscribe to the proposition that the law does

not generally grant discretion to a public employee to act negligently. The discretionary act rule deals not with the act of negligence. The rule grants immunity to public employees who perform discretionary acts in a negligent manner. That happened here. The decision to rush to the scene of the disorder lay within his discretion. He exercised this discretion. The fact that he did so negligently does not place him outside the rule. To say that it did would render the rule meaningless.

2. Construing together OCGA §§ 45-9-40 and 33-24-51, one concludes that the legislature intended to require that the state procure liability insurance for the operation of state owned motor vehicles, but the procurement of similar insurance by counties and municipalities is discretionary.

OCGA § 45-9-1 authorizes the purchase of liability insurance or formulation of plans of self-insurance to insure public officers or employees of any agency, board, bureau, commission, department, or authority of the state to the extent that they are not immune from liability. This purchase is discretionary. OCGA § 45-9-1 (c) specifically excludes counties and municipalities from the term "agency" of the state.

OCGA § 45-9-20 provides for the purchase of liability insurance by counties and municipalities to insure officers and employees against liability for damages arising out of the performance of their duties whether based upon negligence, violation of contract rights, or violation of civil, constitutional, or statutory law. There is no provision in this section for formulation of plans of self-insurance.

From the statutes construed, it is apparent that the legislature intended to require the state to purchase liability insurance to insure against liability for damages arising out of the operation of state vehicles. The state and its agencies are authorized to purchase insurance or formulate self insurance plans to insure officers and employees against liability for damages arising out of the performance of their duties. Counties and municipalities are authorized to procure insurance to insure officers and employees against liability for damages arising out of the performance of their duties. It is apparent that the statute authorizing this purchase does not require it. *Toombs County v. O'Neal*, 254 Ga., supra, holds that under Art. I, Sec. II, Par. IX of the 1983 Constitution of the State of Georgia, counties as well as the state waive sovereign immunity to the extent that they have liability insurance. Nothing in *Toombs County v. O'Neal* requires that counties procure insurance.

The foregoing discussion leads us to the following analysis:

(1) OCGA § 45-9-40 requires the state to secure a blanket or group liability insurance policy covering its employees during the operation of any state owned motor vehicle. There

is no corresponding requirement for counties.

(2) OCGA § 45-9-1 authorizes the state or any of its

agencies, boards, bureaus, commissions, departments or authorities to purchase policies of liability insurance or contracts of indemnity or to formulate sound programs of self-insurance as additional compensation for its employees. Subparagraph (c) of that section specifically excludes counties and municipalities from the section.

(3) OCGA § 45-9-20 allows counties to purchase liability insurance covering their employees as additional compensation but grants no authority to provide a self-insurance plan.

(4) OCGA § 45-9-21 allows counties to provide a legal

defense to employees for certain legal actions but again makes no mention of a self-insurance program or any waiver of sovereign immunity.

From this, we can only conclude that the legislature has not empowered the counties to establish a self-insurance program.

3. Since the defense of sovereign immunity is available to Logue in the absence of liability insurance, and since the purchase of such insurance was discretionary, Logue is entitled to summary judgment unless Richmond County had liability insurance protecting him against liability. It is undisputed that Richmond County did not purchase a policy which would protect him. However, Wright contends that the Department of Risk Management of Richmond County, budgeted to compensate claims against the county and its employees, constitutes a self-insurance program which waives sovereign immunity. Logue insists that this fund cannot constitute a self-insurance fund which would waive immunity because OCGA § 45-9-1, the section containing the self-insurance option, does not apply to counties.

We hold that under the statutes dealing with liability insurance for government employees and officials, only state self-insurance plans will waive sovereign immunity. There is no provision for a county to set up a self-insurance plan. Therefore the fund established by Richmond County is not a self-insurance plan which will waive sovereign immunity.

*Judgment reversed. All the Justices concur, except Smith, P. J., who dissents.*

SMITH, Presiding Justice, dissenting.
*The General Rule*
1. As the majority acknowledges, Officer Logue had no discretion

to violate the law and the law generally does not grant discretion to public employees to act negligently. However, the majority seems to hold that an officer's discretion does not end as long as he is answering a call and that included within his discretion is the authority to act negligently and still avoid personal liability. I disagree.[1] The general rule is that in the absence of a statute an officer or an employee is not immune from liability for their negligent acts in driving a motor vehicle. W. L. Prosser and W. P. Keeton, Prosser & Keeton, Handbook on the Law of Torts, p. 1062 (5th ed. 1984). "[U]nless provided by statute, the county is not liable for the negligent acts of its servants. My research indicates there are no other statutes that make the county liable for the negligent acts of deputy sheriffs or special deputy sheriffs." 1969, Opinion of the Attorney General, 131 at p. 169.

*Ministerial v. Discretionary Duties*

2. I believe that duties can be discretional in nature and have within them ministerial duties that must be performed. I also believe that once an officer goes outside of the scope of his authority he has exceeded his discretion. In either case the officer should be held personally liable for his acts. The following from *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980), and *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915) (1982), leads me to that conclusion. As this Court stated in *Hennessy*, supra, 245 Ga. at 330-31:

> "It is a well-established principle that a public official who fails to perform purely ministerial duties required by law is subject to an action for damages by one who is injured by his omission. However, it is equally well established that 'where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided

---

[1] In working on this dissent I began to wonder just how far an officer's discretion reached. While in thought, I read an order on cross-motions for partial summary judgment submitted by the amicus in opposition to the motion for reconsideration. Civil Action No. 80-5545-1, *Yolanda Alford v. Lt. Peter Osie-Kwasi, et al.*, Superior Court of DeKalb County. The facts are as follows: Ms. Alford was incarcerated in the DeKalb County jail. She and an officer became engaged in a conversation. "[U]nhappy with the results of her conversation with the lieutenant, [she] began kicking at her cell door. The lieutenant fired a taser at [Ms. Alford. She] was then pregnant. [Ms. Alford] received medical attention to the areas hit by the Taser. The following day, [she] alleges she attempted suicide due to her depression over the taser incident." The court relied upon the first decision issued in *Logue*, decided April 20, 1990, and found because the county cannot "set up a self-insurance plan," the county's fund "is not and cannot be qualified as a self-insurance plan." The court ruled that sovereign immunity had not been waived.

the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' " (Emphasis omitted.)

Only when an official is "invested with discretion and is empowered to exercise his judgment in matters brought before him[,]" is the official *"sometimes* called a quasi-judicial officer. . . ." (Emphasis supplied.) Id. The officer in this case was not so "invested" or "empowered." I can find no authority that would "invest" or "empower" any officer with discretion to disobey the law. While there are certain aspects of answering a call that may require discretion, no officer is "empowered" to disobey the law.

The decision as to whether duties are discretionary or ministerial is determined by the facts of the case. *Nelson,* supra, 249 Ga. at 336. Ministerial duties are those which must be performed without regard to the official's own judgment and must be performed in obedience to some specific external mandate. They are duties which the officer has no power or discretion to deviate from and they must be performed in the manner prescribed. Discretionary duties are those in which there are no specific mandates and in which the officer has power or discretion to interpret and judge the manner in which he will perform in a certain situation. Adherence to the law does not involve the exercise of discretion. Adherence to the law is a ministerial duty of the highest order.

Furthermore, the opinions of this Court indicate that the characterization of a duty must be determined by the nature of the act to be performed and not by the title of the official who is performing it. Not all of the acts of an official vested with discretionary powers are discretionary. In *Nelson,* id., Mr. York, Warden of the Spalding County Correctional Institute, had a duty to maintain and replace traffic control devices. Of course as Warden, Mr. York had broad discretion in many areas, just as an officer has broad discretion in many areas. That discretion, however, is properly limited by the ministerial duties that must be performed. Justice Clarke, writing for the majority in *Nelson,* id., stated:

> The act of replacing and repairing signs is ministerial and not discretionary in its nature. Once York is notified that a sign is missing his duty is to replace it; this duty does not involve the exercise of a discretion on his part. The performance of this duty is, therefore, a ministerial act.

Mr. York may have had the discretion to decide who he would send out to replace the sign, however, it was not within his discretion to fail to replace it. Likewise, Officer Logue could exercise his discretion

to "rush to the scene" (Majority opinion p. 208); however, it was his duty to observe the specific external mandate of the law and to drive with "due regard for the safety of all persons[,]" OCGA § 40-6-6 (d), while rushing to the scene. That duty did not involve the exercise of discretion on his part. The performance of that duty was, therefore, a ministerial act.

Officer Logue, like all citizens, must obey the law. Nothing relieves "the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons." OCGA § 40-6-6 (d). As stated by the majority, "an act could be within the scope of authority as required by *Hennessy v. Webb*, supra, and still be beyond the exercise of sound discretion." (Majority opinion p. 207.) A finding that the officer was "answering a call" is not enough to declare that the officer was within his authority.

*When Does An Issue of Fact Arise?*

3. This opinion reverses the trial court's denial of Officer Logue's motion for summary judgment. However, in *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 303-04 (357 SE2d 569) (1987), this Court refused to uphold the trial court's grant of summary judgment to a police officer who was answering a bona fide emergency call when he lost control of his car and crashed into another vehicle. The Court stated that OCGA § 40-6-6 (d) requires officers to " 'drive with due regard for the safety of all persons[,]' " id. at 303-04. Officer Logue was not answering a bona fide emergency call when he crashed into Ms. Wright. This is not the result the General Assembly intended when OCGA § 40-6-6 was drafted.

In construing OCGA § 40-6-6, the Court of Appeals in *Archer v. Johnson*, 90 Ga. App. 418, 422 (83 SE2d 314) (1954) states:

> This Code section is but a modern expression of the doctrine . . . that arresting officers . . . have a broad scope of authority and freedom of action while in the performance of their very responsible functions.

> We now refer to another doctrine of our law. That doctrine is that the protection of the person and property of the citizen is the paramount purpose of government. "Protection to person and property is the paramount duty of government and shall be impartial and complete." Constitution of the State of Georgia of [1983, Art. I, Sec. I, Par. II]. In this momentous declaration of our bill of rights is laid the cornerstone of the Commonwealth itself. The right to use the public thoroughfares with reasonable safety is an important liberty to be enjoyed by the citizen. The protection of his person and automobile while exercising this privilege against

anyone, even an officer of the law who fails to use reasonable care is guaranteed to him by this constitutional provision.

. . .

The legislature intended by the act to do two things: first, to give drivers of certain authorized emergency vehicles the right to travel when occasion required it at a speed in excess of the limit fixed by the statute applicable to motor vehicles generally; secondly, to protect the public on highways, and even those riding in the vehicles thus favored, from reckless disregard of their safety by drivers of these privileged vehicles.

. . .

It is desirable that the ambulance reach the stricken patient, that the fire engine proceed to and quench the fire, that the officer overtake and apprehend the criminal, but it is equally as important that innocent persons, whether or not connected with the emergency to be met, not be maimed or killed in the operation.

The statute was designed to give emergency vehicle drivers privileges when answering emergency calls, but it was also designed to protect the citizens of this state in the exercise of their rights to reasonable safety while traveling on the roads. The officer in this non-emergency situation knowingly ignored the law and caused a citizen personal injury and property damage that now she alone will have to bear.

The majority of this Court had decided that Officer Logue was merely negligently performing his duty. This decision has denied Ms. Wright her right to have a jury decide questions of fact; a role that is properly reserved for juries in our system of justice. Summary judgment was not appropriate in *Crews v. McQueen*, 192 Ga. App. 560 (385 SE2d 712) (1989) because a question of fact remained; likewise, summary judgment is not appropriate in this case. The question of fact in *Crews* was whether or not the principal was acting within the exercise of sound discretion as required by OCGA § 20-2-731. Questions of fact remain here also. Some of the questions, a jury, not this Court, should decide are as follows: 1) Were Officer Logue's acts discretionary or ministerial? 2) If the acts were discretionary, was Officer Logue acting within the exercise of sound discretion as required by OCGA § 40-6-6 (d)? 3) If the acts were discretionary, did Officer Logue exceed the scope of his authority? 4) If the acts were discretionary, did Officer Logue's failure to yield the right-of-way and fail-

ure to use his lights and siren in a non-emergency situation rise to the level of reckless disregard for the safety of others?

### Self-Insurance

4. The majority concludes that counties are forbidden from creating self-insurance funds because there is nothing in the statutes it cites that grants the power to create self-insurance and that OCGA § 45-9-1 does not apply to counties. I differ with this construction.

I believe this result is unconstitutional. It is generally known that commercial insurance rates have been soaring and that there are certain liabilities that commercial insurance will not cover. As a result counties and other governmental bodies have already diverted tax dollars into less expensive self-insurance. Today's holding denies the counties a valuable right that other governmental bodies, state agencies, are granted, i.e., the opportunity to elect to protect its employees with self-insurance. County taxpayers are now denied the right to elect to spend their tax dollars in a less expensive manner — self-insurance. County taxpayers whose tax dollars have already gone into a self-insurance plan are now denied the right to sue for individual redress if they are injured by county employees — sovereign immunity.

More importantly, neither this Court nor the General Assembly can constitutionally forbid individual counties from determining the form of insurance coverage they wish to provide for their employees. The counties have been authorized by a higher power — the 1983 Georgia Constitution — to establish any form of insurance they wish to establish. Each county has been granted, pursuant to the Home Rule for Counties and Municipalities provision of the Georgia Constitution, the "powers and limitations as are provided in this Constitution and as provided by law." Art. IX, Sec. I, Par. I. Neither this Court nor the General Assembly has the authority to withdraw the powers that are granted by the Constitution.

The 1983 Georgia Constitution, Art. IX, Sec. II, Par I (f), grants counties the power to "establish and maintain" insurance benefits for its employees. Thus, counties are free to "establish" any type of insurance they wish to "establish." When granting this power to the counties, the drafters elected to use the broad word "establish" which comprehends far more than the narrow word "purchase." "Establish" encompasses *any form* of insurance the county decides to "establish," including self-insurance. This constitutional provision vests in the county governing authorities the *sole* power and authority to establish any kind of insurance benefits they wish to establish for their employees. The General Assembly is divested of authority to dictate the type of insurance the counties may establish. *Richmond County v. Pierce*, 234 Ga. 274, 280 (215 SE2d 665) (1975); *Johnston v. Hicks*, 225 Ga. 576 (170 SE2d 410) (1969).

## *Conclusion*

5. If county taxpayers are going to be denied the opportunity to adopt a self-insurance plan, and since without insurance there is no waiver of sovereign immunity, then we should not grant immunity to county officials who drive motor vehicles in a negligent manner. The burden of damage resulting from the negligent acts of county officials should not be imposed totally upon the innocent citizen who was wrongfully injured.

County taxpayers must pay into the county coffers, but when the same county taxpayers are injured by a county official, the official can answer: "negligence," and the county can respond: "The King can do no wrong." The wrongfully injured taxpayer is left to bear the burden alone. For this reason and those stated above, I respectfully dissent.

DECIDED APRIL 20, 1990 —
RECONSIDERATION DENIED MAY 31, 1990.

*Burnside, Wall & Daniel, Robert C. Daniel, James W. Ellison,* for appellant.

*David L. Huguenin, John M. Lewis IV,* for appellee.

*Winburn, Lewis & Barrow, Gene Mac Winburn, Foy R. Devine, Frank J. Beltran,* amici curiae.