Paula MORGAN, et al., Plaintiffs,

v.

William David CAUSEY,
et al., Defendants.

No. 5:94–cv–358–4 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 9, 1996.

Karen Kelly Daniels, Macon, GA, for plaintiff.

Richard B. Eason, Jr., Atlanta, GA, for William David Causey.

Duke R. Groover, Frank H. Childs, Jr., Macon, GA, for Wilbur A. Barnes, Robert N. Reece, Jones County, Georgia,

˙ Joseph H. Chambless, Macon, GA, for Government Employees Insurance Company.

## *ORDER*

OWENS, District Judge.

Before the court is defendant Barnes' motion for summary judgment. Plaintiff sued Barnes, individually and in his capacity as a sheriff's deputy; William D. Causey; The Jones County Sheriff; and Jones County. The instant motion merely seeks to insulate Barnes from individual liability. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

### I. FACTS

Around 3:30 a.m. on the morning of September 5, 1992, defendant Barnes, a sheriff's

deputy in Jones County, received a call from his dispatcher alerting him that a red Conquest has eluded two Bibb County officers. Within a few minutes, Barnes saw the suspect run a stop sign. Based on the dispatch and the fact that the car had run a stop sign, Barnes initiated pursuit. Barnes activated the blue lights and siren on his Crown Victoria patrol car. In response to this, the suspect picked up speed and refused to stop. Barnes continued in pursuit of the suspect for close to five miles.

Barnes deposed that pursuit was initiated and continued solely at his discretion. Barnes further stated that he would have discontinued pursuit had he determined, in his best judgment, that preservation of life or property were endangered. While in pursuit of the suspect, William D. Causey, who is also a defendant herein, Barnes was involved in an automobile collision with a car driven by plaintiff.

## II. LAW

### A. Summary Judgment

Federal Rule of Civil Procedure ("FED.R.CIV.P.") 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [1] no genuine issue as to any material fact and that [2] the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995).

Under the first element, the issue must be *genuine,* and the factual dispute must be *material* to the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Materiality" is determined by reference to the substantive law that controls the case. *Id.; Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some *metaphysical doubt* as to the material facts,' " *Irby,* 44 F.3d at 953 (quoting *Matsu-*

*shita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986))—the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party. * * * If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 248, 249–50, 106 S.Ct. at 2510–11. Only those doubts about facts that are *reasonable* must be resolved in favor of the nonmovant. *Irby,* 44 F.3d at 953 (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)).

The second element—that the movant be entitled to judgment as a matter of law—is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), genuine issues of material fact necessitating a trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

### B. Official Immunity

In 1991, Georgia amended its constitution to provide as follows:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The pro-

visions of this subparagraph shall not be waived.

*Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 483 (1994) (quoting GA. CONST. art. I, § 2, ¶ 9(d)). As summarized by the Georgia Supreme Court, employees of departments and agencies of the state are "subject to suit only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.'" *Id.* This section provides "immunity for the negligent performance of discretionary acts," which is consistent with the policy of "providing immunity from personal liability to government employees who work in positions where they make policy or exercise discretion." *Id.*

■ "Discretionary acts are," in turn, "those calling for the exercise of personal deliberation and judgment, which entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Christensen v. State,* 219 Ga.App. 10, 464 S.E.2d 14, 18 (1995). By comparison, a "ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Joyce v. Van Arsdale,* 196 Ga.App. 95, 395 S.E.2d 275, 276 (1990) (internal quotations omitted). In deciding whether an action is discretionary or ministerial, courts should consider "the character of the specific actions complained of, not the general nature of the job...." *Guthrie v. Irons,* 211 Ga.App. 502, 439 S.E.2d 732, 735 (1993). Further, this determination is to be made "on a case by case basis." *Id.*

The Georgia Supreme Court has been confronted at least twice with factual scenarios similar to that now before the court. In *Logue v. Wright,* 260 Ga. 206, 392 S.E.2d 235, 237 (1990), the court held that a deputy sheriff exercises discretion when he decides "to rush to the scene of the disorder." In *Gilbert,* the court found a deputy sheriff to

again be performing an official discretionary function by responding to an emergency call.

## III. DISCUSSION

■ Based on the official immunity doctrine, Barnes claims that he is entitled to summary judgment in his personal capacity. In light of the substantive law controlling this case (that of official immunity), the sole question for decision is whether defendant Barnes was performing a discretionary act. Based on the results reached in *Gilbert* and *Logue,* the court finds that Barnes was engaged in a discretionary function. For the reasons stated below, the court finds unappealing plaintiff's various arguments on this question.

Plaintiff first argues that defendant was not engaged in a discretionary act because he was not responding to a bona fide emergency. In so arguing, plaintiff presumes that an emergency situation is a *sine qua non* for an officer to exercise the discretion to run with flashing lights and sirens, and disobey the usual traffic laws. *Compare* O.C.G.A. § 40–6–6.[1] Plaintiff would thus have the court (jury) conduct a *post hoc* evaluation of whether the conditions under which defendant acted constituted an emergency.

But is that not the ultimate question, and the very reason that the law favors a policy of cloaking those who are called upon to exercise discretion in the performance of their official functions? What is an emergency situation? And whom do we charge with deciding whether a situation is an emergency? The officer on patrol. The officer must, in light of surrounding circumstances in effect at the moment, exercise discretion to decide whether the situations demands a particular response, such as initiating pursuit of a vehicle.

In this connection, plaintiff cites *McLemore v. City Council of Augusta,* 212 Ga. App. 862, 443 S.E.2d 505, 508 (1994), for the proposition that a question of fact as to

---

1. The court notes that O.C.G.A. § 40–6–6, which permits the "driver of an authorized emergency vehicle or law enforcement vehicle" to disobey the usual traffic laws, does not condition its grant of this privilege upon the existence of an emergency situation. The privileges of that code section are available to the drivers of covered vehicles "when responding to an emergency call, or *when in the pursuit of an actual or suspected violator of the law,* or when responding to but not upon returning from a fire alarm ..." (emphasis supplied).

whether the officer was continuing to respond to an emergency at the time of an accident precludes summary judgment. Plaintiff argues that whether defendant Barnes was responding to a bona fide emergency is subject to dispute, and thus warrants denial of summary judgment. Specifically, plaintiff argues that an emergency situation did not exist; that continued pursuit was unnecessary because defendant Barnes knew that another officer was poised to intercept the fleeing car within minutes; and, that defendant Barnes knew Causey had not committed a serious crime.

*McLemore* is distinguishable from this case. In *McLemore,* the court reversed the grant of summary judgment to defendant-officer because of the existence of a question of fact, *viz.,* whether the defendant was still engaged in the exercise of discretion at the time the accident occurred. Specifically, the defendant in *McLemore* had initially set out to respond to an emergency call made by another officer. When the accident occurred, defendant's blue lights, which had been on earlier, were no longer flashing, and there was testimony that defendant was headed in a direction opposite of the emergency call. The question was not whether an emergency still existed, but whether defendant's actions were tailored as a response to the emergency call. In contrast, defendant Barnes undoubtedly remained in pursuit of Causey at the time of the accident, and his blue lights were unquestionably flashing.

Secondly, plaintiff makes much of the facts that Barnes was notified that other vehicles were in a position to intercept the suspect; that Barnes had the tag number of the suspect; and that Barnes had no information that a crime had been committed. Plaintiff apparently suggests that the presence of these facts preclude a finding that Barnes exercised discretion. Although these are certainly factors one would consider in initiating pursuit of a fleeing vehicle, they cut both ways. For example, the fact that someone was in a position to intercept might have meant that it was necessary for Barnes to continue the pursuit, so as to flush the suspect towards the awaiting officer. Although Barnes had not been notified that a crime

had been committed, he did have information that the suspect had already eluded law enforcement officials in another county. A reasonable assumption when one runs from law enforcement personnel is that they have committed a crime. Additionally, it was slightly before 4:00 a.m., when little if any traffic is to be expected on the roads. That these considerations lend themselves to differing interpretations demonstrates

> the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may now be acting largely on the basis of hindsight. . . .

*Gilbert,* 452 S.E.2d at 481 (quoting RESTATEMENT (SECOND) OF TORTS § 895D cmt. b).

Finally, plaintiff points to the sheriff department's policy regarding pursuit. Although plaintiff claims that this policy statement shows that Barnes was engaged in a ministerial act, the guidelines call for termination of pursuit "by *decision of pursuing officer*" (emphasis supplied). *See also* Reg. 83–4.5 ("An officer can expect to engage in high speed pursuits in the performance of his/her duty. In these circumstances, he or she must apply sound *judgement*"). And contrary to plaintiff's claim that Barnes initiated pursuit in violation of policy, pursuit is authorized where a motorist "deliberately takes action in attempt to evade officer."

Plaintiff has failed to adduce significantly probative evidence that defendant Barnes' decision to initiate pursuit was not "discretionary" for purposes of the official immunity doctrine. Further, plaintiff has not produced evidence to rebut the finding that defendant was engaged in the performance of a discretionary function at the time the accident occurred. Accordingly, defendant Barnes is entitled to summary judgment.

## IV. CONCLUSION

In the court's considered judgment, plaintiff has failed to adduce the significantly probative evidence required to create a material issue of fact. As such, defendant Barnes has

shown that he is entitled to the defense of official immunity as a matter of law. Defendant Barnes' motion for summary judgment [TAB # 38] is **GRANTED**.

**SO ORDERED.**