70599. FEDERATED MUTUAL INSURANCE COMPANY
v. DeKALB COUNTY.
(335 SE2d 873)

DEEN, Presiding Judge.

 Federated Mutual Insurance Company brought an action under OCGA § 48-5-380 against DeKalb County, seeking a refund of gross premium taxes in the amount of $27,088.98 which were paid during the years 1981 through 1983 pursuant to DeKalb County Code § 7-1011 (1). Federated Mutual moved for summary judgment, urging the retrospective application of *Cotton States Mut. Ins. Co. v. DeKalb County*, 251 Ga. 309 (304 SE2d 386) (1983), which declared § 7-1011 (1) unauthorized and void. The county answered the complaint, admitted the taxes had been paid by the insurance company as required under the ordinance, but denied liability for a refund and moved for summary judgment, contending that the *Cotton States* decision had no retroactive effect.

 The trial court granted the county's motion, finding that the taxes were assessed and collected under a 1958 local constitutional amendment (Ga. L. 1958, p. 582) and the 1959 enabling legislation (Ga. L. 1959, pp. 2658-61); and that the *Cotton States* decision presented the first opportunity for the Supreme Court to address the effect of the enactment of the 1960 Insurance Code on local ordinances such as § 7-1011 (1). After applying the tests set forth in *Chevron Oil Co. v. Huson*, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971), the court held that the *Cotton States* decision would be given prospective application only. Federated Mutual appeals. *Held*:

 In 1958 a local constitutional amendment authorized DeKalb County to levy license taxes "on all firms and corporations doing business in the unincorporated area of said county except businesses which are subject to regulation by the State Public Service Corpora-

tion," Ga. L. 1958, pp. 582, 583. The implementing legislation amended Ga. L. 1957, p. 3237, by adding a new paragraph at the end of section 12 to be designated as paragraph "(r)," which would enable the county to "[f]ix, levy, assess license fees, charges or taxes on all persons, firms and corporations engaging in or offering to engage in any trade, business, calling, avocation or profession" in the unincorporated area of the county. Ga. L. 1959, pp. 2658, 2659. On July 1, 1959, the county enacted a business license ordinance which levied a tax on all such businesses within the county, including casualty insurance companies. It called for a percentage tax upon the gross premium receipts of all persons authorized or certified as insurance agents by an insurance company or companies doing business in the state. This ordinance was amended several times over the years, and at the time of the *Cotton States* decision, it levied a tax upon insurance companies (with the exception of life insurance companies) of three percent of the gross premiums received during the preceeding license year.

Shortly after DeKalb County adopted its ordinance imposing a license tax on insurance companies, the General Assembly enacted the Georgia Insurance Code of 1960, which had an effective date of January 1, 1961, and which provided for a statewide gross premiums tax of 2.25% on all casualty companies doing business in the state and a $300.00 fee to be levied on all insurance companies. Ga. L. 1960, pp. 289, 392, 507. The tax on gross premiums was not a new tax; it had been in existence since 1935, when a 1.5% tax was enacted. Ga. L. 1935, pp. 11, 60-61. In 1945 the rate was increased to 2%. Ga. L. 1945, pp. 419, 420. The language of the provision in the Insurance Code of 1960 first appeared in 1955 and authorized a tax of 2.25%. Ga. L. 1955 (Extra Sess.), p. 45 et seq. The 1960 Insurance Code and prior provisions authorizing such a tax did not make reference to similar taxes that local governments could impose. In 1963 the General Assembly amended DeKalb County's 1959 local act and reenacted section 12 (r), which pertained to the county's authority to impose business license taxes, by deleting the exception to businesses which are subject to regulation by the Public Service Commission and adding a provision pertaining to businesses operating buses upon county roads. No change was made referring to the county's authority to tax insurance companies. Ga. L. 1963, pp. 3324-3325.

In 1964 the Insurance Code was amended to add a new section expressly preempting the field of imposing taxes, except ad valorem and real property taxes, upon *life* insurance companies. Municipalities, but not counties, were permitted to impose a gross premiums tax not to exceed one percent upon life insurance companies. Ga. L. 1964, p. 122 et seq. Similar express preemption language applying to all insurance companies, including casualty insurers, was not added until

1983. Ga. L. 1983, pp. 1595, 1596. A new section, Ga. L. 1963, p. 1600 (OCGA § 33-8-8.2), was added and authorizes cities and counties to levy a tax "at a rate not to exceed 2.5 percent upon the gross direct premiums of all foreign, alien, and domestic insurance companies doing business in this state other than life insurance companies." Section 3 of this Act (OCGA § 33-8-8.2 (d)) authorizes cities and counties which were levying a tax on gross premiums on January 1, 1983, at a rate in excess of 2.5 percent to continue to levy the tax provided the rate is reduced to 2.5 percent by January 1, 1986. The Insurance Commissioner, however, is now authorized to collect the taxes imposed on behalf of the counties and municipalities. OCGA § 33-8-8.2 (b) (3) (C). This Act was further amended in 1984 by the addition of two sections, denominated OCGA §§ 33-8-8.5 and 33-8-8.6, to provide for the reimbursement of illegally assessed and collected insurance premiums by a county or municipality and to require that a written protest accompany payment of the tax as a condition precedent to recovery. Ga. L. 1984, p. 1294.

We must next consider the case law in determining the application of the *Cotton States* decision. "The overruling of a decision is generally retroactive, but retroactive application of a decision overruling a prior decision may be declined where unjust results would accrue to those who justifiably relied upon the prior rule." *Preston Carroll Co. v. Morrison Assur. Co.*, 173 Ga. App. 412 (326 SE2d 486) (1985), reversed on other grounds 254 Ga. 608 (331 SE2d 520) (1985). This general rule was recently noted in *Solem v. Stumes*, ___ U. S. ___ (104 SC 1338, 79 LE2d 579) (1984), and the court noted that "retroactive application is not compelled constitutionally or otherwise." Where retroactive application is determined to be inappropriate, any such application must be based on the "interest of justice" and "the exigencies of the situation." 79 LE2d at 586-587. In *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712 (300 SE2d 673) (1983), the court adopted the test set forth in *Chevron Oil Co. v. Huson*, 404 U. S. 97, supra, and held that in deciding whether a decision should be applied retroactively the court should: "(1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. (2) Balance of the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation. (3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of non- retroactivity."

In applying the first prong of the test set forth in *Chevron Oil*, we

find that the Insurance Code enacted in 1960 contains no preemption language as to either casualty or life insurance companies. This fact was obviously considered by the Supreme Court, which held that the 1960 enactment repealed by implication DeKalb County's statutory authority to impose a gross premium tax on casualty insurance companies. As discussed previously, the 1963 Act amended the local enabling legislation and reenacted section 12 (r) of the 1959 Act (which pertained to the authority of the county to impose business and license taxes) without containing any preemption language as to insurance companies. Such language did not appear until the 1964 amendment to the Insurance Code to expressly preempt the taxing of life insurance companies. No mention was made of other types of insurers. In 1983, prior to the decision in *Cotton States*, the General Assembly preempted all insurance companies, but authorized the cities and counties to levy a 2.5% tax and permitted existing taxes to continue at a scaled-down rate. We therefore find on the basis of the statutory history of the Insurance Code and the local enabling legislation, that the county could reasonably believe its ordinance was valid.

We must next turn to the case history of the DeKalb County ordinance to determine whether the *Cotton States* decision established a new principle of law by overruling past precedents or deciding an issue of first impression. The court points out that "[t]hese acts are no strangers to this court." 251 Ga. at 310, as it had been asked on at least five previous occasions to review the validity of the county's taxing attempts, which the county claimed were authorized under the constitutional amendment and implementing act. We note, however, that the cited cases involved the business license aspect of the ordinance and that only one case, *Chicago Title Ins. Co. v. Nash*, 228 Ga. 719 (187 SE2d 662) (1972), involved an insurance company. In that case the court held there was no evidence the company was doing business within the unincorporated area of DeKalb County. In *Nash v. Nat. Preferred Life Ins. Co.*, 222 Ga. 14, 22 (148 SE2d 402) (1966), the 1958 local constitutional amendment and 1959 local act were reviewed in light of the 1964 act, and the court held that "the license tax ordinance of DeKalb County insofar as it imposes a tax upon life insurance companies is repealed by the Act of 1964." We note that this decision did not involve interpretation of the 1960 Insurance Code, but construed only the 1964 amendment; and that the legislature in 1981 reversed this case by adding a provision to the Insurance Code to permit the counties to tax the gross premiums of life insurance companies doing business in the unincorporated areas of the county. Ga. L. 1981, p. 380 et seq. (OCGA § 33-8-8.1).

"The *Cotton States* decision came as a surprise to many outside the industry who follow taxation of insurance companies." J. Coalson, Jr., "State & Local Taxation," 36 Mer. L. Rev. 307, 319 (1984). Coal-

son observes that the court in *Cotton States* went much further than in *Nash v. Nat. Preferred Life Ins. Co.*, supra, by concluding that the legislature in adopting the 1960 Insurance Code entirely preempted by implication the field with respect to taxation of insurance companies.

"No mention was made in the *Cotton States* decision of the fact that the 1960 Act adopting the Insurance Code represented in large part merely a consolidation of statutory provisions that previously had been scattered throughout the code rather than a sweeping new regulatory scheme, and that this was certainly the case with respect to the statewide gross premiums tax, which then had been in existence for 25 years. Nor did the court discuss the fact that the statewide gross receipts tax incorporated into the Insurance Code in 1960 (and later codified at Official Code of Georgia Annotated section 33-8-4) did not deal separately with life insurance companies and other kinds of insurers, but rather applied to *all* foreign and domestic insurance companies doing business in Georgia. As a result, if the 1960 legislation preempted local taxes with respect to casualty insurance companies, as the court concluded in *Cotton States*, it presumably did so with respect to life insurance companies as well. This conclusion makes it difficult to explain the need felt by the legislature to include express preemption language with respect to life insurance companies in the 1964 amendments, or indeed difficult to explain the court's own reliance on the 1964 express preemption language in *Nat. Preferred Life* with respect to life insurance carriers and its subsequent 17-year delay (following the *National Preferred Life* decision) in concluding that the 1960 Act had already preempted *all* local taxation of all insurance carriers even prior to the 1964 amendments." Id. at 319-320.

We find that the *Cotton States* decision was the first time the 1960 Insurance Code was interpreted to invalidate local taxing authority over insurance companies (other than life insurance companies) and was therefore an issue of first impression whose resolution was not clearly foreshadowed. Casualty insurers doing business within the unincorporated area of DeKalb County filed returns and paid taxes under the 1959 ordinance for almost 24 years without challenging its validity. Moreover, in *Allstate Ins. Co. v. DeKalb County*, 250 Ga. XXVII (296 SE2d 610) (1982) (aff'd without opinion), the validity of the ordinance was not challenged. The trial court correctly concluded that the first factor in the *Chevron Oil* case is resolved in favor of prospective application of the holding in *Cotton States*.

The second prong of the *Chevron Oil* test requires the court to balance the merits and demerits of the case by looking into the prior history of the rule, its purpose and effect, and whether retrospective operation would further or retard its operation. The legislative history both preceding and following the enactment of the ordinance has

been set forth in detail above. The legislative intent behind the 1958 and 1959 laws was to empower DeKalb County to levy a tax on the gross premiums of insurance companies doing business within the unincorporated area and to allow the counties to spend the monies collected for public purposes. The action of the legislature in 1984, after the *Cotton States* decision, clarifies its intent to authorize local taxation, OCGA § 33-8-8.2, to avoid a windfall to insurance companies by providing that any recovery must be distributed on a pro rata basis to the policyholders, OCGA § 33-8-8.5, and to protect local governments by assuring that their coffers would not be depleted by tax refund requests by requiring a written protest. OCGA § 33-8-8.6.

Although there is no evidence of the county's potential liability other than the amount claimed in this case and an estimate of the amount insurance companies could claim if *Cotton States* were applied retroactively, it is apparent that local governments would be required to refund large sums of money for which the funds may not now be available. The fact that the sums could amount to millions of dollars could present a financial stability problem for those governments required to make such refunds, and could cause local governments to increase taxation and/or reduce existing services. The insurance companies could possibly obtain a windfall if it should be determined that the refund requirements of OCGA § 33-8-8.5 did not apply to companies that filed for the refund before that provision's effective date. Moreover, there is no provision in the law for disposition of funds when the insurance company is unable to locate policyholders. As these refunds may be sought for the three preceding years, this amount could be substantial. We therefore find that the trial court did not err in holding after examining the prior history of the rule, that prospective application of *Cotton States* will further the purpose and effect of the Insurance Code and the local statutory enactments.

The final test required in *Chevron Oil* requires a balancing of the equities by looking at the inequity imposed by retrospective application. In *Strickland v. Newton County*, 244 Ga. 54, 55 (258 SE2d 132) (1979), the court had to determine whether the decision in *City Council of Augusta v. Mangelly*, 243 Ga. 358 (254 SE2d 315) (1979), which held a city's local option sales tax unconstitutional, should be given prospective application so as to entitle the city to retain the taxes collected prior to the Supreme Court decision. The court held its decision should be given prospective application and noted that the harsh rule that an unconstitutional statute is wholly void from the date of enactment is subject to exception "where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it. *Allan v. Allan*, 236 Ga. 199 (223 SE2d 445) (1976). *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U. S. 371 [(60 SC 317, 84 LE 329)] (1940). Under these

considerations, when a court decides that one of its rulings shall operate prospectively, it is subject to no set principles, but may choose any relevant date in the interest of justice." *Strickland v. Newton County*, supra at 55.

As in the *Strickland* case, the county collected the taxes in good faith reliance that its ordinance was valid. Appellant has received a benefit under the *Cotton States* decision in that it no longer has to pay those taxes, and the taxes sought to be recovered were paid for an unspecified number of years by the company without any protest whatsoever. In *Allan v. Allan*, supra, the court held portions of Georgia's year's support statute unconstitutional, but declined to give the decision retroactive application, holding that its long history, the good faith reliance upon the statute, and the disruptive effect a retroactive application would have upon those who relied upon its validity was sufficient to give it prospective application only. See also *Adams v. Adams*, 249 Ga. 477 (291 SE2d 518) (1982). *Walker v. Walker*, 247 Ga. 502 (277 SE2d 45) (1981). The "legitimacy of protecting reasonable reliance on prior law" is a valid concern for our courts "even where that requires allowing an unconstitutional statute to remain in effect for a limited period of time." *Heckler v. Mathews*, ___ U. S. ___ (104 SC 1387, 1398, 79 LE2d 646) (1984). See also *Cipriano v. City of Houma*, 395 U. S. 701 (89 SC 1897, 23 LE2d 647) (1969), where the court declined to give retroactive effect to a lower court's decision declaring a state voting law unconstitutional, so as to avoid invalidating revenue bonds which had already been issued by the city.

In examining any inequity done to the insurance company by failing to grant retroactive application to *Cotton States*, we note that the insurance company is not really denied any funds because of the tax ordinance because any cost of meeting this tax obligation was passed on to its insureds in the premium. Indeed, retroactive application would increase the insurance company's workload if OCGA § 33-8-8.5 is determined to be applicable to these companies who filed for a refund before its effective dates because the company would have to review all its policies for the past three years, notify the policyholders, make a good faith attempt to locate those who had moved, determine each policyholder's pro rata share of the refund, and then send out the refund. The possibility of a windfall to the company has been discussed above. Moreover, the insurance company and its insureds have benefited through the expenditure of these funds for public purposes.

Even though the 1960 Act contained language which the court in *Cotton States* interpreted as impliedly repealing local authority over taxing property and casualty companies, the legislature, from 1961 through 1983, continued to pass local acts granting local governments the authority to impose such taxes, thereby giving local governments the impression that they still had the authority to impose such taxes.

A list of these acts has been provided in the *amicus curiae* briefs submitted on behalf of the Georgia Municipal Association, Inc.[1]

We find the trial court correctly balanced the equities and found that the third prong of the *Chevron Oil* test to be satisfied in favor of DeKalb County.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED SEPTEMBER 3, 1985.
REHEARING DENIED SEPTEMBER 18, 1985 — 

*William A. Bagwell, Thomas M. Cole, Weymon H. Forrester*, for appellant.

*Gail S. Flake, Albert S. Johnson*, for appellee.

*Stephen F. Gertzman, Alfred A. Lindseth, Richard L. Robbins, James M. Elliott, Jr., Joan E. W. Wooley, Robert M. Travis, James R. Schulz*, amici curiae.

---

[1] City of Calhoun, Ga. L. 1983, pp. 4710, 4730; City of St. Marys, Ga. L. 1981, pp. 4783, 4784; City of DeSoto, Ga. L. 1980, pp. 4442, 4447; City of Hapeville, Ga. L. 1980, pp. 3769, 3785; City of Athens, Ga. L. 1979, pp. 3770, 3805; City of Covington, Ga. L. 1979, p. 3986 (Charter Amendment); City of Oxford, Ga. L. 1979, p. 3984 (Charter Amendment); City of Macon, Ga. L. 1977, pp. 3776, 3801; City of Pooler, Ga. L. 1976, pp. 3419, 3479; Town of Thunderbolt, Ga. L. 1974, pp. 3269, 3291; City of Atlanta, Ga. L. 1973, pp. 2188, 2233; City of Pitts, Ga. L. 1970, pp. 2806, 2819, City of Palmetto, Ga. L. 1966, p. 2771, Sec. 28.1 at 2785; City of Hamilton, Ga. L. 1964, pp. 2601, 2612; City of Lavonia, Ga. L. 1964 (Ex. Sess.), pp. 2008, 2040; City of Oconee, Ga. L. 1963, pp. 2755, 2769; City of Omaha, Ga. L. 1963, pp. 3262, 3275; City of Sylvania, Ga. L. 1963, pp. 2030, 2059; City of Rochelle, Ga. L. 1962, pp. 2791, 2804; City of Brunswick, Ga. L. 1961, Sec. 4 at 2217 (Charter Amendment); City of Shiloh, Ga. L. 1961, pp. 2045, 2056; City of Summerville, Ga. L. 1961, pp. 2658, 2674; City of Zebulon, Ga. L. 1961, pp. 2074, 2718.