A90A1553. HOSPITAL AUTHORITY OF FULTON COUNTY
et al. v. LITTERILLA.
A90A1814. HOSPITAL AUTHORITY OF FULTON COUNTY
et al. v. HYDE et al.
(404 SE2d 796)

SOGNIER, Chief Judge.

This consolidated appeal raises the question whether the Hospital Authority of Fulton County d/b/a Northside Hospital (the "Authority") is entitled to the defense of governmental immunity in medical malpractice actions, and if so, whether that immunity is waived to the extent of a liability trust fund. In Case No. A90A1553, Angela Litterilla, by next friend Mary Litterilla, brought suit against the Authority and others in Fulton County State Court, asserting a claim arising from the allegedly negligent acts of the defendants during her birth. Carl and Ann Hyde brought a claim in Fulton Superior Court against the Authority and a physician in Case No. A90A1814 for alleged negligence in the performance of a surgical procedure on Mr. Hyde. Both courts denied the Authority's motions for summary judgment on the immunity issue. We authorized interlocutory appeals from both orders and have consolidated the cases for review.

1. The extent to which hospital authorities are entitled to the defense of governmental immunity is an unsettled issue because of several appellate rulings on various aspects of the immunity issue. Accordingly, we must review the applicable legal principles. The Georgia Constitution authorizes counties to provide, inter alia, "[p]ublic health facilities and services, including hospitals." Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (3). The procedure for the exercise of this power is set forth in the Hospital Authorities Law, Ga. L. 1964, p. 499 (now codified at OCGA § 31-7-71 et seq.), which has the express legislative purpose of "provid[ing] a mechanism for the operation and maintenance of needed health care facilities in . . . counties." OCGA § 31-7-76 (a). Counties are authorized to establish hospital authorities, which are "deemed to exercise public and essential governmental functions," OCGA § 31-7-75, and which may operate only nonprofit facilities funded in part by tax revenues. OCGA §§ 31-7-77; 31-7-84. The Authority was established and continues to operate under this

statutory scheme.

In *Hall v. Hospital Auth. of Floyd County*, 93 Ga. App. 319, 320 (91 SE2d 530) (1956), the court concluded that because the preservation of public health was a duty of the State as a sovereign power, the delegation of that obligation to counties meant that activities of counties in discharging this duty constituted " 'the exercise of a purely governmental function.' " When this delegation of duty is made, the court held, "the corporation maintaining and operating a hospital under such delegated authority, not for profit, is in the exercise of a governmental function and not subject to suit in a tort action," id. at 321, and thus hospital authorities were entitled to the defense of sovereign immunity. This ruling was soon superseded. In *Knowles v. Housing Auth. of Columbus*, 212 Ga. 729 (95 SE2d 659) (1956), the Supreme Court held that a provision in an enabling statute authorizing an entity "to sue and be sued" caused a waiver of the judicially created doctrine of sovereign immunity. Shortly thereafter, this court acknowledged that identical language in the predecessor to the Hospital Authorities Law (see Ga. Code Ann. Ch. 99-15) compelled the conclusion that the immunity of hospital authorities likewise was waived. *Hospital Auth. of Hall County v. Shubert*, 96 Ga. App. 222, 224-225 (1) (99 SE2d 708) (1957). This conclusion was reaffirmed after enactment of the current version of the Hospital Authorities Law. *Medical Center Hospital Auth. v. Andrews*, 250 Ga. 424 (1) (297 SE2d 28) (1982).

During this period of judicial evolution of the doctrine of sovereign immunity, the doctrine attained constitutional status. Ga. Const. of 1976, Art. VI, Sec. V, Par. I (former Ga. Code Ann. § 2-3401) (superseded by Ga. Const. of 1983, Art. I, Sec. II, Par. IX). In addition, one year ago the Supreme Court reversed its interpretation of the legislative "sue and be sued" language, and ruled "that in any instances in which an entity is given the power 'to sue and be sued' that language means only that the entity has the status and capacity to enter our courts, and *does not signify a waiver of sovereign immunity* against suit. Any cases that hold to the contrary are hereby overruled." (Emphasis supplied.) *Self v. City of Atlanta*, 259 Ga. 78, 80 (1) (377 SE2d 674) (1989). This unequivocal ruling means that *Knowles, Shubert,* and *Andrews* are no longer controlling, and since the "sovereign immunity rule [as it existed] prior to 1973 has now been made a part of our Constitution," *Miree v. United States*, 242 Ga. 126, 133 (1) (249 SE2d 573) (1978), the application of the immunity doctrine to hospital authorities must be determined by reference to the constitutional provision.

Although the 1983 Georgia Constitution extends sovereign immunity to the State and its "departments and agencies" (Art. I, Sec. II, Par. IX), that language has been held to apply to counties and their

instrumentalities as well. *Toombs County v. O'Neal*, 254 Ga. 390 (330 SE2d 95) (1985); see *Ward v. Bulloch County*, 258 Ga. 92 (365 SE2d 440) (1988). Thus, if the Authority is an agency or instrumentality of Fulton County and is operated primarily for the benefit of the public rather than for the generation of revenue for the county, it is entitled to assert the defense of governmental immunity available to the county (to the extent that defense has not been waived). See *Johnson v. City of Atlanta*, 171 Ga. App. 296, 297 (1) (319 SE2d 506) (1984).

In addition to this court's analysis of a hospital authority's function and status in *Hall*, supra, the Supreme Court has considered, in contexts other than the immunity issue, the nature of hospital authorities. In *Cox Enterprises v. Carroll &c. Hosp. Auth.*, 247 Ga. 39 (273 SE2d 841) (1981), the court determined that a hospital authority organized under the Hospital Authorities Law could not bring a libel action against a newspaper because the authority was a governmental entity and thus subject to the prohibition on libel actions by governments. "Factors tending to establish the Authority's governmental nature include that it is a creature of statute; that it is defined as a 'public body corporate and politic' . . .; that its Board is appointed by the governing body of the relevant political subdivision or subdivisions; that it is tax exempt; that it is deemed to exercise public and essential governmental functions; that it may exercise the power of eminent domain; that i[t] receives tax revenues; and that the governing bodies of the relevant political subdivisions have a role in determining the disposition of its property upon dissolution." (Emphasis omitted.) Id. at 44. See *Fulton-DeKalb Hosp. Auth. v. Gaither*, 241 Ga. 572 (247 SE2d 89) (1978) (hospital authorities are state and county instrumentalities and were not subject to the former definition of "employer" in the Workers' Compensation Act); accord *James v. Richmond County Health Dept.*, 168 Ga. App. 416 (309 SE2d 411) (1983) (sovereign immunity of counties extends to county health departments because they are engaged in governmental functions and act as agents of State).

Given this judicial history, and considering the enabling language under which the Authority was created and operates, we conclude that hospital authorities established pursuant to the Hospital Authorities Law are entitled to the defense of governmental immunity except to the extent there has been a waiver under the constitutional provision.

We note that *Self*, supra, was decided after the instant actions were filed. As a general rule, court rulings that substantially alter existing law apply retroactively, but our courts have recognized that rulings in civil cases may be applied prospectively. *General Motors Corp. v. Rasmussen*, 255 Ga. 544, 545-546 (2) (340 SE2d 586) (1986). In *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712-715 (3) (300 SE2d

673) (1983), the Supreme Court determined that in analyzing the question of retroactivity the three-pronged test set forth in *Chevron Oil Co. v. Huson,* 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971) should be applied. Accordingly, we must (1) ascertain whether *Self* established a new principle of law either by overruling past precedent or by deciding an issue of first impression whose result was not clearly foreshadowed; (2) balance the merits by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive application would further or retard its operation; and (3) weigh the inequity imposed by retroactive application to ascertain whether the decision could produce substantial inequitable results if applied retroactively. *James B. Beam &c. v. State of Ga.,* 259 Ga. 363, 364 (2) (382 SE2d 95) (1989).

Applying the first prong, as we have discussed in this Division, *Self* did overrule existing precedent. However, as the Supreme Court acknowledged in *Self,* the issue of waiver of sovereign immunity by "sue and be sued" statutory language has been the subject of numerous conflicting decisions in recent years. Consequently, we cannot say that the first prong of the *Chevron* test compels a prospective application of the rule established in *Self.* As to the second prong of the test, the purpose of sovereign immunity is to protect the public treasury. See *Martin v. Ga. Dept. of Public Safety,* 257 Ga. 300, 301 (1) (357 SE2d 569) (1987). The effect of the Supreme Court's opinion in *Self* was to further this goal by establishing that a waiver of this constitutional doctrine may be effected only with express statutory language. Accordingly, retroactive application would further the purpose of the sovereign immunity doctrine.

With regard to the third prong of the *Chevron* test, retroactive application does not result in an "ex post facto" deprivation of vested rights as contended by the dissent. First, we note that "ex post facto" terminology has no application to civil cases, and the only question is whether the decision should be applied retroactively or prospectively. *Abu-Khdeir v. T. J. Maxx, Inc.,* 191 Ga. App. 523-524 (382 SE2d 216) (1989). Second, given that the status of sovereign immunity law in general and the "sue and be sued" analysis in particular has been in a state of flux in recent years (see the recognition of this uncertainty in *Self,* supra at 79-80 (1)), we cannot agree that any litigant could be considered to have had a vested right to pursue a tort claim against a government defendant. Indeed, this court has held any opportunity afforded by the State to bring suit against it is a privilege, not a vested right, because the State may not be subject to suit without its consent and that consent may be withdrawn at any time. *Goolsby v. Regents of Univ. System,* 141 Ga. App. 605, 606-608 (1) (234 SE2d 165) (1977). *"The consent of a state to be sued,* being voluntary, may be withdrawn or *modified by the state whenever it sees fit, even*

*though pending suits may be thereby defeated. . . .*" (Punctuation omitted.) Id. at 608 (1). Third, the result of the prospective application of *Self* is analogous to the situation the Supreme Court addressed in *James B. Beam,* supra. In that case, the court rejected retroactive application of a decision holding a state revenue statute unconstitutional because of the burden that would be placed on the taxpayers. In the case at bar, prospective application of *Self* would leave the public treasury exposed to claims against which the voters of Georgia have indicated governmental entities are entitled to the constitutional protection of sovereign immunity. The dissent's contention that the liability trust fund established by the Authority would avoid this result is inconsistent with the Supreme Court's decision in *Logue v. Wright,* 260 Ga. 206 (392 SE2d 235) (1990). As we discuss in Division 2 (a) infra, given the ruling in *Logue,* the Authority is not authorized to establish a self-insurance fund. It would be disingenuous to hold that a liability fund the Authority was not authorized to create nonetheless could provide coverage for liability claims so as to eliminate the need for the protection of governmental immunity. Accordingly, we find the equities do not demand an exception to the general rule of retroactive application of court decisions, and thus we will apply *Self* retroactively.

2. The constitutional provision currently in effect provides that sovereign immunity is waived for actions ex contractu brought for breach of a written contract, and is waived to the extent the legislature so provides by statute. Ga. Const. of 1983, Art. I, Sec. II, Par. IX. Sovereign immunity also is waived for liability actions "for any claim . . . for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided." Id. There being no legislative waiver of the Authority's immunity, the only applicable waiver clauses are those concerning actions for breach of written contracts and claims for which liability insurance has been provided.

(a) *Liability insurance waiver*: The Authority has established a trust agreement, effective August 1, 1978, to provide "a self-funding program, on an actuarially sound basis, designed to enable Northside Hospital to 'self-insure' the first [$3,000,000.00] of malpractice and comprehensive general patient liability losses incurred [by the hospital] each year," with a limit of $2,000,000 per claim. It is undisputed that the Authority pays no premium for this coverage, that no commercial liability carrier or policy is involved, and that no portion of the risk is distributed to or assumed by any other party. The Authority contends the trial court erred by denying its motions for summary judgment made on the ground that this reserve fund did not constitute the provision of insurance within the meaning of the constitutional waiver provision.

We agree with the Authority that this issue is controlled by the Supreme Court's ruling in *Logue,* supra, which was decided after entry of the lower court orders at issue in these appeals. In *Logue,* the court reasoned that because the statute authorizing state self-insurance funds expressly excluded counties (OCGA § 45-9-1 (c)), and because the parallel provision authorizing counties to purchase liability insurance did not expressly authorize the establishment of county self-insurance funds (OCGA § 45-9-20), counties are not authorized to set up self-insurance funds, and the liability reserve fund at issue did not constitute a self-insurance plan so as to waive the county's governmental immunity. Since we determined in Division 1 that the Authority is a county entity or instrumentality, we are constrained to conclude that under *Logue* the Authority is not authorized to establish a self-insurance fund, and thus the liability trust maintained by the Authority is not a self-insurance fund and its existence does not constitute a waiver of the Authority's governmental immunity. Compare *Brockman v. Burnette,* 184 Ga. App. 66 (360 SE2d 655) (1987) (city's purchase of commercial general liability policy resulted in a waiver of governmental immunity).

(b) *Ex contractu waiver:* Appellee Litterilla advances the argument that her complaint should be construed as a claim for breach of the contract her parents made with the hospital, and accordingly the Authority's immunity is waived. Her claim, however, arose on June 23, 1980, prior to the effective date of the 1983 constitution, which does not apply retroactively. *Wilmoth v. Henry County,* 251 Ga. 643, 644 (2) (309 SE2d 126) (1983). Since the 1976 constitution makes no provision for waiver of immunity in ex contractu actions (Art. VI, Sec. V, Par. I, former Ga. Code Ann. § 2-3401), this argument is without merit. See *C. F. I. Constr. Co. v. Bd. of Regents &c.,* 145 Ga. App. 471, 472-474 (2, 3) (243 SE2d 700) (1978).

Appellee Hyde has not advanced this argument, but we will address it because, as the respondent on motion for summary judgment, appellee must be given the benefit of all favorable inferences and reasonable doubts that may arise from the evidence. *Ga. Farm &c. Ins. Co. v. Allstate Ins. Co.,* 190 Ga. App. 593, 594 (379 SE2d 619) (1989). To the extent that the physician-patient relationship gives rise to an *implied* contract, see *St. Joseph's Hosp. v. Mattair,* 239 Ga. 674 (2) (238 SE2d 366) (1977), appellee Hyde does not allege the existence or breach of a *written* contract for provision of services by the hospital or the Authority, which is the constitutional prerequisite for waiver of immunity, and our review of the record does not disclose the existence of such an agreement.

Having found that the Authority is entitled to the defense of governmental immunity, and having further ruled that the Authority's immunity has not been waived, we hold the trial court erred by deny-

ing the Authority's motions for summary judgment.

*Judgments reversed. McMurray, P. J., Banke, P. J., Birdsong, P. J., Beasley, Cooper and Andrews, JJ., concur. Carley and Pope, JJ., dissent.*

CARLEY, Judge, dissenting.

In my opinion, appellant-defendant has no viable sovereign immunity defense in the instant cases and its motions were, therefore, correctly denied. Accordingly, I must respectfully dissent.

In seeking to recover against appellant, appellee-plaintiffs rely on *Medical Center Hosp. Auth. v. Andrews*, 250 Ga. 424 (1) (297 SE2d 28) (1982). In that case, the Supreme Court clearly and unequivocally held that the "sue and be sued" language of OCGA § 31-7-75 (1) constitutes an express legislative waiver of a county hospital authority's sovereign immunity. In support of its motions for summary judgment appellant relies upon *Self v. City of Atlanta*, 259 Ga. 78 (377 SE2d 674) (1989). In that case, the Supreme Court specifically overruled *Medical Center Hosp. Auth. v. Andrews*, supra, and a number of its other decisions and held that the "sue and be sued" language should *no longer* be construed as an express legislative waiver of sovereign immunity. However, appellees' claims against appellant arose *prior* to the Supreme Court's decision in *Self v. City of Atlanta*, supra. Accordingly, the instant cases would be controlled by the clear and unequivocal holding in *Medical Center Hosp. Auth. v. Andrews*, supra, *unless* the decision in *Self v. City of Atlanta*, supra, is to be given retroactive application. "The issue of non-retroactivity is presented in a case where the principle of law relied upon[, such as the principle of non-wavier of sovereign immunity that is relied upon by appellant in the instant cases,] is one which was established as a new principle of law in a prior decision. [Cit.] A court announces a new principle of law when it . . . overrules clear past precedent such as was done in [*Self v. City of Atlanta*, supra]. . . ." *Federated Mut. Ins. Co. v. DeKalb County*, 255 Ga. 522, 523 (341 SE2d 3) (1986), aff'g 176 Ga. App. 70 (335 SE2d 873) (1985). Thus, the majority's holding is premised entirely upon the retroactive applicability of *Self v. City of Atlanta*, supra, and, in my opinion, that premise is incorrect.

As noted, *Medical Center Hosp. Auth. v. Andrews*, supra, was clear and unequivocal precedent for the legal proposition that appellees' claims are *not* barred because the "sue and be sued" language of OCGA § 31-7-75 (1) *does* constitute an express legislative *waiver* of appellant's sovereign immunity. Obviously, this clear and unequivocal precedent was relied upon by the legislature. After that decision, the General Assembly never acted to repeal or to modify OCGA § 31-7-75 (1) so as to evince a legislative intent that county hospital authorities were not deemed to have waived sovereign immunity. Compare *Na-*

*tional Distrib. Co. v. Dept. of Transp.*, 248 Ga. 451 (283 SE2d 470) (1981). Likewise, appellant obviously relied upon *Medical Center Hosp. Auth. v. Andrews*, supra, and the other decisions overruled in *Self v. City of Atlanta*, supra, because it established a self-insurance fund which would be legally superfluous if its sovereign immunity had not been waived. To give *Self v. City of Atlanta*, supra, retroactive effect under these circumstances would be inequitable to appellees. It would sanction an ex post facto proscription on appellees' right to pursue their vested claims against appellant. Likewise, to give *Self v. City of Atlanta*, supra, retroactive effect under these circumstances would result in an unwarranted windfall to appellant. It would sanction appellant's ex post facto release from potential liability to patients with vested claims and the expenditure of its self-insurance fund for purposes other than the benefit of those for whom it was created.

For these reasons, it is my opinion that *Self v. City of Atlanta*, supra, should be applied *prospectively* only and that the instant cases are controlled by the clear and unequivocal holding in *Medical Center Hosp. Auth. v. Andrews*, supra. See *Federated Mut. Ins. Co. v. DeKalb County*, supra; *Financeamerica Corp. v. Drake*, 154 Ga. App. 811, 817-820 (270 SE2d 449) (1980). It follows that appellant has no viable sovereign immunity defense because of the express legislative waiver of that defense, and that I must respectfully dissent to the majority's reversal of the denial of appellant's motions for summary judgment.

I am authorized to state that Judge Pope joins in this dissent.

DECIDED MARCH 8, 1991 —
REHEARING DENIED MARCH 28, 1991 — 

*Powell, Goldstein, Frazer & Murphy, James D. Meadows, Randall L. Hughes, Adrienne E. Marting, Love & Willingham, Daryll Love, Hezekiah Sistrunk*, for appellants (case no. A90A1553).

*Davis, Gregory & Christy, Hardy Gregory, Jr., William Q. Bird*, for appellee.

*Powell, Goldstein, Frazer & Murphy, James D. Meadows, Randall L. Hughes, Adrienne E. Marting, Sullivan, Hall, Booth & Smith, Rush S. Smith, Jr.*, for appellants (case no. A90A1814).

*England, Weaver & Kytle, J. Melvin England, James W. Kytle*, for appellees.