A93A0713, A93A0943. CARTER et al. v. FULTON-DeKALB COUNTY HOSPITAL AUTHORITY; and vice versa.
(433 SE2d 433)

COOPER, Judge.

Appellants, the administratrix of the decedent's estate and the surviving child of the decedent, brought an action against appellee, alleging negligent treatment and transport of the decedent following an automobile accident. In March 1991, the trial court granted appellee's motion for summary judgment on the grounds that appellants' claims against appellee were barred under the doctrine of sovereign immunity. Appellants filed a timely notice of appeal from the trial court's order granting summary judgment to appellee (Case No. A93A0713). In September 1991, appellee moved to dismiss the appeal due to appellants' unreasonable delay in transmitting the record on appeal, and after hearing argument, the trial court denied the motion. In Case No. A93A0943, appellee appeals the denial of its motion to dismiss the appeal.[1]

*Case No. A93A0943*

1. Since a determination that the trial court should have dismissed appellants' appeal would make it unnecessary to address appellants' appeal of the grant of summary judgment to appellee, we first review the propriety of the trial court's order denying appellee's motion to dismiss appellants' appeal. The record reflects that appellants filed their notice of appeal in April 1991. In July 1991, a bill of costs was sent to appellants, which was not paid. On August 5, 1991, appellants filed a motion to extend time and stay appeal, along with

---

[1] Although appellee designated this appeal as a cross-appeal, we note that OCGA § 5-6-38 (a) allows a cross-appeal to be filed within 15 days from the service of the notice of appeal. Since appellee's notice of appeal was filed several months after appellants' notice of appeal and from a different order, it cannot be deemed a cross-appeal but is a timely filed independent appeal.

an affidavit of indigency on behalf of the estate of the decedent. Appellants contended that the estate of the decedent was indigent and that a stay should be granted to await the outcome of a pending Supreme Court decision which could impact on the main appeal. On August 15, 1991, appellants filed affidavits of indigency on behalf of the administratrix and the surviving child. It is undisputed that neither of the August 15 affidavits of indigency were served on appellee and that appellee had no notice of the existence of the affidavits until July 1992. In September 1991, appellee responded to appellants' motion to stay the appeal and also filed a motion to dismiss appellants' appeal on the ground that appellants had unreasonably and inexcusably delayed in paying the costs of the appeal. Appellants did not respond to appellee's motion until more than nine months later. At a hearing in July 1992, appellee discovered that appellants had filed affidavits of indigency in August 1991. However, appellee argued that the affidavits were ineffective because they had not been served on appellee. After hearing arguments from both parties, the trial court denied appellee's motion to dismiss. The trial court found that appellants were not indigent and that their delay in transmitting the record was unreasonable and inexcusable, but ruled that the appeal could not be dismissed because appellants had filed affidavits of indigency. The trial judge noted in her order that although the policy in Fulton County was that the record would not be prepared and transmitted until the court approved the affidavit of indigency and entered an order allowing the appellant to proceed as an indigent, OCGA § 5-6-48 requires only that the affidavit of indigency be filed to avoid dismissal.

OCGA § 5-6-48 (c) provides that "the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable *and was caused by the failure of a party to* pay costs in the trial court or *file an affidavit of indigence.*" (Emphasis supplied.) See also OCGA § 5-6-48 (a) ("Failure of any party to perfect service of any notice or other paper hereunder shall not work dismissal.") Appellee argues that appellants had a duty to inquire into the fact that the record had not been transmitted and to take whatever action necessary to see that the record was prepared and transmitted. We agree with appellee and the trial court that appellants' delay in following up on the transmission of the record was unreasonable and inexcusable, but we are constrained by the language of OCGA § 5-6-48 as well as the mandate of OCGA § 5-6-30 that the appellate practice provisions be liberally construed "so as to bring about a decision on the merits of every case appealed." Accordingly, we conclude that since appellants filed affidavits of indigency, the trial court properly denied appellee's motion to dismiss.

*Case No. A93A0713*

2. Appellants contend that the trial court erred in granting summary judgment to appellee on its defense of sovereign immunity. The trial court relied on our decision in *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345 (1) (404 SE2d 796) (1991) ("*Litterilla 1*"), in which we held that a hospital authority established pursuant to the Hospital Authorities Law is entitled to the defense of sovereign immunity except to the extent that there has been a waiver under the Constitution. Our decision in *Litterilla 1* involved a retroactive application of the Supreme Court of Georgia's holding in *Self v. City of Atlanta*, 259 Ga. 78 (1) (377 SE2d 674) (1989) that the language "sue or be sued" in an entity's charter or enabling statute does not constitute a waiver of sovereign immunity against suit.[2] In *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992) ("*Litterilla 2*"), the Supreme Court of Georgia reversed our holding in *Litterilla 1* but limited its decision to the specific question raised on certiorari, which was whether the existence of a liability trust fund resulted in a waiver of the Authority's sovereign immunity. The Supreme Court held that the liability trust fund constituted liability insurance protection and acted as a waiver of sovereign immunity. The Court expressly declined to review those parts of our decision which held that a county hospital authority is entitled to the defense of sovereign immunity and that the rule of *Self* must be applied retroactively. Id. at 35, n. 1.

Appellants argue that the reasoning of the dissent in *Litterilla 1*, which concluded that *Self* should not be applied retroactively, is more persuasive and should be adopted in this case. We disagree with appellants. In *Litterilla 1*, we analyzed the question of retroactivity utilizing the three-pronged test set forth in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (3) (300 SE2d 673) (1983) by (1) ascertaining whether *Self* established a new principle of law; (2) balancing the merits by looking at the purpose and effect of the prior law; and (3) weighing the inequities presented by retroactive application of the new rule. See *Litterilla 1*, supra at 348. We concluded that *Self* did establish a new rule by overruling existing precedent but did so in an area which had been the subject of numerous conflicting decisions in recent years; that retroactive application of *Self* would further the purpose of protecting the public treasury; and that the equities did not demand an exception to the general rule of retroactivity. Id. Upon opportunity to review our application of *Self*, we are convinced that the reasoning of the majority is sound and that the rule announced in

---

[2] For a brief summary of the judicial evolution of the doctrine of sovereign immunity, see *Litterilla 1*, at 345-347.

*Self* should be given retroactive application.

3. Appellants also argue that the hospital authority should not be entitled to sovereign immunity because the operation of an ambulance service was not a governmental function but was a function the hospital authority engaged in to further a proprietary interest. The distinction between governmental functions and ministerial acts does not apply to counties. *Ware County v. Cason*, 189 Ga. 78 (2) (5 SE2d 339) (1939); *Early County v. Fincher*, 184 Ga. App. 47, 49-50 (360 SE2d 602) (1987). Accordingly, we find no merit to appellants' argument.

4. Appellants also argue that any sovereign immunity which appellee enjoys has been waived because appellee has a self-insurance program. At the time this cause of action arose, Ga. Const. 1983, Art. I, Sec. II, Par. IX provided that the defense of sovereign immunity was waived for any claim for which liability insurance protection had been provided but only to the extent of any liability insurance provided. In *Litterilla 2* the Supreme Court held that an Umbrella Liability Policy purchased by the hospital authority together with a trust fund providing self insurance of up to $2,000,000 constituted "liability insurance protection" within the meaning of the Constitution. The record contains the affidavit of appellee's chief executive officer, who states therein that at the time appellants' cause of action arose, the hospital did not have any insurance policy providing medical liability coverage or comprehensive general liability coverage or any other coverage which would be applicable to appellants' claims. However, appellants refer us to a supplemental brief filed by appellee in which there is some mention of a self-insurance plan consisting of funds set aside in a trust account, and argue that these assertions constitute an admission as to the existence of insurance. See *Dennington v. Rockdale Package Stores*, 161 Ga. App. 450 (288 SE2d 709) (1982). Appellee's argument in the court below raises a question about whether any insurance existed. However, the record is incomplete, and the trial court did not specifically address the question of insurance in its order. Since the trial court's ruling was made prior to the Supreme Court's decision in *Litterilla 2*, we remand this case to the trial court to allow the parties to perfect the record on the issue of insurance coverage which could constitute a waiver of sovereign immunity, after which the trial court should enter an appropriate order consistent with this opinion and *Litterilla 2*.

*Judgment affirmed in Case No. A93A0943. Case No. A93A0713 remanded with direction. McMurray, P. J., concurs. Beasley, P. J., concurs specially.*

BEASLEY, Presiding Judge, concurring specially.

I concur fully in Divisions 2 and 3 but not in Division 1. As to it,

I concur in refusing to reverse the trial court's decision not to dismiss the appeal. It is a matter of discretion, *Corbin v. First Nat. Bank*, 151 Ga. App. 33, 34 (1) (258 SE2d 697) (1979), and the judge did not commit an error of law in choosing to permit the appeal to proceed. Nor would she have legally erred if she had dismissed the appeal, for in the stated opinions of both the trial court and this court, appellant's delay was unreasonable and inexcusable. In fact, she found it to be "clearly" so, and further, "that this is precisely the type of case that the dismissal statute was intended to reach." However, she recognized that local practice requires approval of the affidavit of indigency before the clerk will proceed to prepare the record for appeal and transmit it without the payment of costs; she impliedly did not fault appellant for not obtaining such approval. The affidavit, and the appeal, just languished despite appellee's motion to dismiss it almost five months after the notice of appeal had been filed and nearly a month after the affidavits were filed. Over ten months went by before there was a hearing on appellee's motion to dismiss the appeal, and this was eleven months after appellants had filed their affidavits of indigency and motion to extend the time and to stay the appeals.

OCGA § 5-6-48 (c) provides that "the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence. . . ." Although the court initially made the requisite findings for dismissal, the court at the same time excused appellant from inquiring into local practice and assuring that the affidavits were effective. So, in the end, the court held that the delay was *not* inexcusable to the extent that dismissal was warranted. The court accepted the fact that the delay was caused not by appellants' failure to file the affidavits of indigency but in their failure to obtain the court's sanction of them. As in *Hammontree v. Hammontree*, 186 Ga. App. 819, 820 (368 SE2d 576) (1988), the explanation was adequate.

On appeal, I conclude that this was not an abuse of discretion, particularly since it is appellants who stand to lose from a delayed appeal. They are seeking money damages, so delay is detrimental to *them* because it prevents their reaching their goal, with all the attendant problems of witness memory loss, difficulties of record-gathering, and the like. Appellee is not harmed, other than to have the nuisance of an unresolved case.

I do not join in the application of OCGA § 5-6-30 to this issue, for such would always overshadow appellants' lagging and emasculate the timeliness requirements of OCGA § 5-6-48. We are not "constrained" to do so. Instead, we are constrained to enforce the dictates of OCGA § 5-6-48, which is carefully constructed to assure the

"speedy" closure of cases by moving appeals along at a steady and reasonable pace with due consideration to the work involved in doing so. The statute makes allowances for forces beyond the control of the appellant and gives the trial judge flexibility to make exceptions. But this flexibility is circumscribed by the twin requisite curbs of reasonable time and excusable cause.

Delay in these two appeals was exacerbated by the clerk's delay. Her certificate in each appeal makes the not uncommon statement: "The delay in this record being transmitted to the Court of Appeals is due to a heavy back log in the Appeals Section." She was unable to meet the time requirements of OCGA § 5-6-43, reflecting a flaw in the court system itself which could be rectified by adequate resources and a streamlined appellate process which utilizes current technology or at least eliminates duplication. See *Rewis v. Shaw*, 208 Ga. App. 876 (432 SE2d 617) (1993).

DECIDED JULY 12, 1993.

*Smolar, Roseman, Brantley & Seifter, Barry L. Roseman*, for appellants.

*Alston & Bird, Robert D. McCallum, Jr., James C. Grant, Scott A. McLaren, Bernard Taylor*, for appellee.