**SECOND DIVISION
MILLER, P. J.,
RICKMAN, AND MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 2, 2024**

# In the Court of Appeals of Georgia

A24A0080. GUY v. HOUSING AUTHORITY OF THE CITY OF
     AUGUSTA, GEORGIA.

RICKMAN, Judge.

The issue presented in this appeal is whether the Housing Authority of the City of Augusta, Georgia ("the Authority") is entitled to assert the privilege of sovereign immunity in a premises liability action filed by a resident of a low-income housing unit operated by the Authority.[1] We conclude that because the Authority is performing an essential public and governmental function on behalf of the City in its operation and management of low-income housing, it is acting as an instrumentality of the City and,

---

[1] We would like to thank the Georgia Trial Lawyers Association, as well as the Housing Authorities of Macon-Bibb County, Georgia; Columbus, Georgia; and the City of Decatur, Georgia for their helpful and well-written briefs as amici curiae.

therefore, is entitled to sovereign immunity. Accordingly, we affirm the trial court's order granting summary judgment in favor of the Authority.

Appellant Christina Guy alleges that she was a tenant in a low-income apartment complex owned and managed by the Authority when, in November 2021, she was shot in the leg when several unknown assailants attempted to rob her on the front porch of her apartment. She filed a premises liability lawsuit against the Authority, alleging that the Authority was negligent in failing to provide property security and/or take measures to keep the property safe for its residents. The Authority filed a motion for summary judgment asserting its entitlement to sovereign immunity. The trial court granted the Authority's motion upon concluding that it was entitled to sovereign immunity and that its immunity had not been waived.[2] This appeal followed.

We review de novo the trial court's ruling. See *McBrayer v. Scarbrough*, 317 Ga. 387, 388 (1) (893 SE2d 660) (2023). In so doing, we recognize that the question of whether sovereign immunity extends to the Authority is not one that is easily

---

[2] Guy does not meaningfully challenge the trial court's ruling that there was no waiver of the Authority's sovereign immunity. See *Hicks v. Newman*, 283 Ga. App. 352, 353 (641 SE2d 589) (2007) (recognizing that a "failure to provide any cogent argument or citation of authority in support of [an] alleged error constitutes waiver").

answered. But after thoroughly examining the history of the common-law doctrine and the subsequently ratified constitutional amendments and statutory law, and after analyzing the purpose for and structure of the Authority, we conclude that it is an instrumentality of the City such that it is entitled to sovereign immunity.

The doctrine of sovereign immunity has been part of our law for nearly 240 years and at common law, it extended to all levels of government and was extremely broad. See *Gilbert v. Richardson*, 264 Ga. 744, 745 (1) (452 SE2d 476) (1994) ("The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions.") (footnote omitted); see also *Peeples v. Byrd*, 98 Ga. 688, 693-694 (4) (25 SE 677) (1896) ("It is hardly necessary to cite authority for the proposition that a sovereign State is not liable to suit at the instance of a citizen, unless permission to sue has been expressly granted."). Sovereign immunity extended to the State and its departments, agencies, and officers in their official capacities. See *Lathrop v. Deal*, 301 Ga. 408, 413 (II) (A) (801 SE2d 867) (2017). Likewise, municipalities performing governmental functions have long been afforded the same immunity as that of the State. See *Gatto v. City of Statesboro*, 312 Ga. 164, 166 (1) (860 SE2d 713) (2021) ("As early as 1880, this Court held that

municipalities enjoyed the same immunity as the State in their performance of acts which are legislative or judicial in their nature, on the ground that such acts are deemed to be but the exercise of a part of the state's power.") (citation and punctuation omitted).

Within this common-law framework, sovereign immunity was incorporated into the Georgia Constitution of 1945 by an amendment ratified in 1974.[3] See *City of College Park v. Clayton County*, 306 Ga. 301, 305 (1) (a) (830 SE2d 179) (2019). Because the constitutional provision incorporates a pre-existing right, "the provision cannot be said to create that right — it merely secures and protects it." *Elliott v. State*, 305 Ga. 179, 212 (IV) (B) (824 SE2d 265) (2019). "And where the right enshrined in the constitution was one found at common law, that constitutional right is understood with reference to the common law, absent some clear textual indication to the contrary." Id. Consequently, "we must look to the understanding of the common law

---

[3] We note that "though the relevant text of our State Constitution regarding sovereign immunity has undergone certain revisions leading up to its current form in the Georgia Constitution of 1983 as amended in 1991, those provisions generally address only the waiver of sovereign immunity." *City of College Park*, 306 Ga. at 305 (1) (a).

doctrine of sovereign immunity in Georgia by 1974 — the date at which Georgia gave the doctrine constitutional status." *City of College Park*, 306 Ga. at 305 (1) (a).

With this history in mind, we turn to the issue of whether the Authority is entitled to the privilege of sovereign immunity. As they did at common law, municipal corporations[4] remain immune from suit under the present constitutional and statutory framework except to the extent that sovereign immunity has been waived by the General Assembly. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; OCGA § 36-33-1 (a). Indeed, the General Assembly declared that, with few exceptions, "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages." OCGA § 36-33-1 (a).[5] And more specifically, "municipal corporations shall not be liable for failure to perform or for errors in performing their

---

[4] OCGA § 36-30-1 provides that the words "city," "town," "municipality," or "village" shall be construed as synonymous, and that "such words shall be held to mean a municipal corporation as defined by statutory law and judicial interpretation."

[5] OCGA § 36-33-1 (a) further provides that, "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."

legislative or judicial powers." OCGA § 36-33-1 (b).[6] This Court has also recognized that sovereign immunity extends, as it did at common law, to instrumentalities of a municipal corporation. See *Hospital Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345, 346-347 (1) (404 SE2d 796) (1991), overruled on other grounds by *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992).

The question thus becomes whether the Authority constitutes an instrumentality of the City of Augusta within the context of sovereign immunity so that it is entitled to assert the privilege.[7] To answer this question, we examine (1) the legislation creating the Authority, and (2) the public purposes for which it was created. See *Miller v. Georgia Ports Auth.*, 266 Ga. 586, 587-589 (470 SE2d 426)

---

[6] Municipalities may be liable "[f]or neglect to perform or improper or unskillful performance of their ministerial duties," OCGA § 36-33-1 (b), but Guy does not assert liability as to the Authority on the basis that it was negligent in performing ministerial duties.

[7] The trial court held that the Authority was entitled to sovereign immunity as a municipal corporation, an instrumentality of the State of Georgia, and as an instrumentality of the City. But see *Pass v. Athens Housing Auth.*, 368 Ga. App. 445, 453 (890 SE2d 342) (2023) (holding that the housing authority was not entitled to sovereign immunity as an instrumentality of the state); *Files v. Housing Auth. of City of Douglas*, 368 Ga. App. 455, 464 (890 SE2d 356) (2023) (same). Because we affirm the trial court's order upon our determination that the Authority is an instrumentality of the City, we need not consider the alternative bases for the trial court's ruling.

(1996); see also *Kyle v. Georgia Lottery Corp.*, 290 Ga. 87, 88-91 (1) (718 SE2d 801) (2011).

(1) Housing Authorities in general, and the Authority specifically, were created by the Housing Authorities Law, OCGA § 8-3-1 et seq. ("the Act"), in order to provide affordable housing for low-income persons. In accordance with the Act, the Authority was activated by the Mayor and Council of the City of Augusta by a resolution issued in 1937. The Authority is defined in the Act as "a public body corporate and politic:"

> In each city and in each county of the state there is created a public body corporate and politic to be known as the "housing authority" of the city or county; provided, however, that such authority shall not transact any business or exercise its powers under this article until or unless the governing body of the city or the county, as the case may be, by proper resolution shall declare at any time hereafter that there is need for an authority to function in such city or county.

OCGA § 8-3-4; see also Ga. Const. of 1983, Art. IX, Sec. II, Para. III (8). The Act further provides that the Authority "exercis[es] public and essential governmental functions." OCGA § 8-3-30 (a). And it declares property owned by the Authority to

7

be "public property used for essential public and governmental purposes and not for purposes of private or corporate benefit and income." OCGA § 8-3-8.

(2) As for its purpose, the General Assembly authorized the creation of the Authority in order to address the "shortage of safe and sanitary dwelling accommodations available at rents which persons of low income can afford" because that shortage could not be relieved solely "through the operation of private enterprise." See OCGA § 8-3-2. The legislature, therefore, deemed housing authorities necessary in order to allow "public money [to] be spent and private property acquired" so as to provide housing to low-income persons. See id. The Authority has the power to condemn property and to use governmental bonds for the purposes of developing low-income housing. See OCGA §§ 8-3-10, 8-3-31, 8-3-70. It is mandated by state law to "manage and operate its housing projects . . . in an efficient manner so as to enable it to fix the rentals for dwelling accommodations for persons of low income at the lowest possible rates." OCGA § 8-3-11. Property obtained by the Authority "is declared to be public property used for essential public and governmental purposes and not for purposes of private or corporate benefit or income." OCGA § 8-3-8. And because the Authority is a public entity serving a

governmental function using public funds, it is "exempt from all taxes and special assessments of the city, the county, and the state or any political subdivision thereof." Id.

As the legislative language and the purpose behind the creation of the Authority both illustrate, the Authority is a public corporation using public funds to perform for the City what the General Assembly has deemed to be an essential public and governmental purpose. See *Miller*, 266 Ga. at 587-589. We conclude, therefore, particularly when viewed in the historical context of our sovereign immunity jurisprudence, that the Authority is an instrumentality of the City of Augusta such that it is entitled to sovereign immunity. See *Kyle v. Georgia Lottery Corp.*, 290 Ga. 87, 91 (1) (718 SE2d 801) (2011) (holding that the Georgia Lottery Corporation was entitled to sovereign immunity as an instrumentality of the State, in part because "its main purpose is to generate net proceeds to be used to support improvements and enhancements for educational purposes and programs"); *Youngblood v. Gwinnett Rockdale Newton Community Service Board*, 273 Ga. 715, 716 (1) (545 SE2d 875) (2001) (holding that a community service board was entitled to sovereign immunity as an agency of the State because it was created by the General Assembly as a "'public

agenc[y]' to govern publicly funded programs which provide mental health, mental retardation, substance abuse, and other disability services" throughout the state); *English v. Fulton County Bldg. Auth.*, 266 Ga. App. 583, 586 (1) (597 SE2d 626) (2004) (holding that a county building authority was entitled to sovereign immunity because it was statutorily identified as performing "an essential government function," was created for projects "that primarily benefit the public," and was judgment proof to the extent that any judgment entered against it would cost taxpayers); see also *Culbreth v. Southwest Ga. Regional Housing Auth.*, 199 Ga. 183, 189 (33 SE2d 684) (1945) (holding, with respect to the assessment of ad valorem taxes, that since the housing authority was a public corporation "using [its] property exclusively for a declared public and governmental purpose, and not for private or corporate benefit or income, it [was] in effect an instrumentality of the State" and its property was exempt from taxation). Compare *Thomas v. Hospital Auth. of Clarke County*, 264 Ga. 40, 43 (2) (440 SE2d 195) (1994), superceded by statute on other grounds as recognized in *Kyle v. Georgia Lottery Corp.*, 290 Ga. 87 (718 SE2d 801) (2011), (noting that the functions performed by a hospital authority do not entitle it to sovereign immunity because the hospital authority was "in direct competition" with private hospitals and functioning

in "an area of business ordinarily carried on by private enterprise"). Accordingly, we affirm the trial court's grant of summary judgment in favor of the Authority on the basis that it was entitled to sovereign immunity as an instrumentality of the City.

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*